# Montilla v. Van Syckel et al.

## Apelación procedente de la Corte de Distrito de

## San Juan.

### No. 116. Resuelto en Marzo 17, 1905.

Contrato.—Definición.—El contrato consiste en la obligación asumida por una ó varias partes, respecto de otra ú otras, de dar alguna cosa, ó prestar algún servicio.

Id.—Contrato de arrendamiento por tiempo indefinido.—Otorgado en este caso un contrato de arrendamiento de finca rústica, por tiempo indefinido, y obligado el arrendador á no enagenar, ni arrendar, la misma finca á otra persona, *mientras el arrendatario cumpliera con el pago del arrendamiento mensual*, y otorgada por el arrendatario, con posterioridad á ese contrato, un acta notarial obligándose á mantener vigente dicho contrato por más de seis años, á fin de poderlo inscribir en el Registro, la manifestación contenida en esa acta no puede merecer la consideración de contrato, pues carece de *causa* y de las partes necesarias para la existencia de todo contrato.

Id.—Novación del contrato.—Según los términos del contrato á, que se refiere el párrafo anterior, la duración del mismo quedaba á voluntad del arrendatario, el que podía darlo por terminado en cualquiera época, dejando de pagar, facultad que no tenía el arrendador que se obligó á respetar el contrato mientras el arrendatario cumpliera, y en tales condiciones, la declaración contenida en dicha acta no puede considerarse como una modificación del contrato original, pues no altera las obligaciones de las partes, y es sólo el ejercicio de una facultad del arrendatario, que no perjudica al arrendador y permite la inscripción del contrato.

Inscripción del contrato de arrendamiento.—Siendo válida el acta notarial de referencia, la inscripción del contrato de arrendamiento en el Registro de la Propiedad es perfectamente legal. (Se confirma lo resuelto en el caso de *Van Syckel v. El Registrador de la Propiedad*, 3 *P. R. Rep.* 18.)

Arrendamiento de fincas rústicas por tiempo indefinido.—Resolución del contrato.—La Ley 3, título 10 del Libro I de la Novísima Recopilación y el Decreto Español de Junio 8, 1813, que disponen que los arrendamientos de fincas rústicas por tiempo indefinido pueden disolverse á voluntad de cualquiera de las partes, notificando á la otra con un año de anticipación, han sido derogados por el Código Civil de 1899, y últimamente, también, por el de 1902.

Sentencia de la Corte Provisional de los Estados Unidos.—Fraude.—Falta de jurisdicción.—Cualesquiera que fueran los errores en que hubiera incurrido la extinguida Corte Provisional de los Estados Unidos en Puerto Rico, al dictar sentencia en un caso sometido á su conocimiento, y aún en el caso de que el Tribunal Supremo de Puerto Rico pudiera anular tal sentencia por virtud de una apelación interpuesta contra otra sentencia de otro Tribunal sobre el cual tuviera jurisdicción de apelación, no se podría discutir la legalidad de tal sentencia de la Corte Provisional si no se alegare haberse practicado fraude por cualquiera de las partes en la acción, ó haberse dictado la sentencia sin jurisdicción sobre las personas ó sobre la materia, objeto del pleito.

Cesión de crédito hipotecario.—Los artículos 1126 y 1127 del Código Civil no son aplicables á la cesión de un crédito hipotecario, que no puede ser considerada como un simple pago, sino como una subrogación.

Id.—Subrogación de derechos.—Los artículos 1177 y 1178 del Código Civil no tienen aplicación á la cesión de un crédito hipotecario, con respecto á la cual la subrogación del cesionario en los derechos del cedente no se presume, sino que expresamente se reconoce por el art. 152 de la Ley Hipotecaria, que no está en contradicción con el Código Civil, ni ha sido derogada, ni modificada, por el mismo.

Id.—Consentimiento del deudor.—Para la enagenación ó cesión de un crédito hipotecario no es necesario el consentimiento del deudor, ni es, tampoco, necesario especificar en el documento mismo que se verifica la subrogación, por que la ley la establece como una consecuencia legal del hecho de la cesión.

Id.—Requisitos necesarios para la cesión ó enagenación de un crédito hipotecario.—Los únicos requisitos necesarios para la validez de una enagenación ó cesión de un crédito hipotecario son: la notificación al deudor; que se consigne en escritura pública; y que se inscriba ésta en el Registro.

Adjudicación en procedimiento judicial.—La simple constitución de una sociedad é inscripción en el Registro de documentos debidamente otorgados, así como la ejecución de cualesquiera otros actos legales verificados por una ó más personas en su esfuerzo de proteger sus derechos y fomentar sus intereses, no pueden ser considerados como una confabulación, simplemente porque perjudican los derechos de un tercero, ni pueden servir de base, sin una prueba más eficaz, para declarar la nulidad de una adjudicación hecha judicialmente.

Apelación.—Pruebas.—El Tribunal Supremo no puede prestar consideración alguna, en una apelación, á aquellos documentos que no deban formar parte de los autos con arreglo á la ley, aún cuando se hallen incluídos en los mismos.

Acción.—Su naturaleza.—La naturaleza de una acción establecida ante la Corte de Distrito, no puede ser cambiada en el Tribunal de apelación, después de haber sido aquella considerada y resuelta por la Corte inferior.

Acción en ley y acción en equidad.—Con arreglo al procedimiento civil vigente en Puerto Rico, la división de las acciones en acciones *en ley* y acciones *en equidad*, no existe, y todas deben ser establecidas de acuerdo con las prescripciones del Código de Procedimientos.

Id.—Procedimiento en equidad.—Un sistema de procedimiento en equidad, tal como el que se sigue en las Cortes de los Estados Unidos y en los Tribunales de algunos Estados, no puede armonizarse con el sistema de leyes vigente en Puerto Rico y aplicado en los Tribunales del país.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Hartzell* y *Rodriguez Serra.*

Abogados de los apelados: *Sres. Acuña* (Eduardo) y *Pettingill.*

El Juez Asociado Sr. MacLeary, emitió la opinión del Tribunal.

El presente recurso de apelación fué interpuesto ante este Tribunal el 24 de Setiembre de 1903, por Emilio Montilla, solicitando la revocación de una sentencia que contra él había dictado, en 14 de Agosto de 1903, el Tribunal de Distrito de San Juan, en una demanda que dicho Montilla había entablado para conseguir la anulación de ciertos documentos y decretos de Tribunales, referentes á una finca sita en el término municipal de Bayamón, y llamada "Santa Cruz". Este recurso es el término de una prolongada serie de litigios que empezaron en la Corte Provisional de los Estados Unidos, el día 20 de Diciembre de

1899, y han continuado sin descanso, en una ú otra forma, hasta el día de hoy.

Dichos litigios tuvieron su principio en un contrato de arrendamiento otorgado por Montilla á favor de Van Syckel, el 23 de Junio de 1897, y se refieren á varias hipotecas y cargas con que la finca había sido gravada antes y después de empezarse esos litigios: cuyas hipotecas y cargas, en su mayoría, se hallaban en poder de José E. Marxuach, que desde el principio hasta el fin, ha sido íntimamente implicado en dichos litigios. De cuando en cuando ha habido cambios en la representación de las partes, hasta que finalmente el apelante se halla representado por el Señor Charles Hartzell y Don Manuel Rodríguez Serra; y los apelados, por Don Eduardo Acuña y el Hon. N. B. K. Pettingill. Se comprenderán mejor las cuestiones de derecho y de hecho que esta apelación envuelve, después de haber examinado cuidadosa y detenidamente la sentencia dictada por el Tribunal sentenciador, contra la cual se ha interpuesto el recurso de apelación, y por esta razón, se transcribe á la letra, á continuación. Dicha sentencia es como sigue:

"*Sentencia.* En la Ciudad de San Juan de Puerto Rico, á 14 de Agosto de 1903.—Vistos en juicio oral y público estos autos declarativos seguidos ante este Tribunal, entre partes de la una, como demandante, Don Emilio Montilla y Valdespino, mayor de edad y vecino de esta Ciudad, defendido por el Letrado Don Pedro de Aldrey y Montolio, y de la otra como demandados, Don José E. Marxuach, defendido por el Letrado Don Wencelao Bosch, no habiendo asistido al juicio oral, y la sociedad P. Van Sickel y Compañia, y Don Paul Van Sickel, defendidos por el Letrado Don Eduardo Acuña Aybar; sobre nulidad de varias escrituras y de un juicio ejecutivo.

*Resultando*: que por acta otorgada ante el Notario Don Mauricio Guerra Mondragón, en 16 de Diciembre de 1899 Don Paulino Van Sickel consignó que por escritura de 23 de Junio de 1897 celebró Don Emilio Montilla y Valdespino, propietario de la finca rústica

"Santa Cruz", sita en Bayamón, contrato de arrendamiento no fijando duración, dejándolo á voluntad del exponente siempre que pagara con puntualidad el canon estipulado, que haciendo uso de esta potestad, por acta ante dicho Notario formalizada el 21 de Octubre del 99, designó más de seis años para la duración del contrato desde su celebración, sin renunciar al derecho de continuarlo vencido ese plazo; que Montilla tiene reconocido un crédito hipotecario por $10.450 provinciales, á favor de Don José E. Marxuach quien sigue pleito contra su deudor y contra la finca Santa Cruz pretendiendo el remate de ella; y como la obstrucción de sus trabajos en la finca, le causaría perjuicio, está decidido á poner los medios de evitarlos sin lesionar los intereses del acreedor, poniendo á Montilla en aptitud de cumplir el arrendamiento, otorga dicha acta y el Notario requiera á Marxuach para que reciba la cantidad que reclama á Montilla y sus intereses y subrogue á Van Sickel en sus derechos hipotecarios cediéndoselos, así como sus aciones contra el deudor, requiera á Montilla consienta en ese pago aceptando la cesión que á favor del compareciente debe hacer Marxuach de la acreencia y réditos, reconociéndole como su acreedor subrogado en sustitución del cedente; constando el requerimiento á Marxuach quién contestó con los artículos 1158, 1159, 1210 del Código Civil, exponiendo sobre ellos lo que de la escritura consta; y requerido Montilla contestó: no le conviene aceptar la proposición de Van Sickel, respecto á los seis años del plazo de arriendo, es la primera noticia que tiene.

*Resultando*: que Don Emilio Montilla presentó en 5 de Diciembre de 1902, demanda ordinaria contra Don José E. Marxuach, Don Pablo Van Sickel y P. Van Sickel y Comp., para que se declaren nulas las escrituras de 16 de Marzo de 1900 en cuanto traspasa la garantía hipotecaria constituída á favor de Marxuach sobre la Hacienda "Santa Cruz"; la de primero de Junio del mismo año de constitución de la sociedad demandada, en cuanto á ella se aportó como hipotecario un crédito que no lo era; nulas las inscripciones por virtud de dichas escrituras practicadas en el Registro de la Propiedad; declarar que ni Pablo Van Syckel, ni P. Van Syckel y Comp., han sido nunca acreedores hipotecarios de Don Emilio Montilla como subrogados en los derechos de Marxuach, que la sociedad solo tiene una acción personal contra Montilla por la cantidad en que haya podido beneficiarle el pago que en su nombre hizo Van Sickel á Marxuach: nulo el ejecutivo hipotecario que la sociedad siguió contra Montilla: nula la adjudicación á ella de la Ha-

cienda "Santa Cruz", y nulas las inscripciones hechas por la adjudicación en el Registro de la Propiedad; declarando extinguidas con arreglo á la ley, las hipotecas constituídas sobre el fundo "Santa Cruz" á favor de Marxuach, disponiendo la cancelación de las inscripciones de dichas hipotecas, condenando á P. Van Sickel y Ca., á indemnizar los daños y perjuicios que haya causado por el ejecutivo que indebidamente tramitó y al pago de las costas: solicitando por otros se ponga nota marginal de nulidad á la inscripción de adjudicación de la hacienda "Santa Cruz."

*Resultando*: que dicha demanda la funda en los hechos siguientes: que Montilla hasta el 21 de Diciembre de 1901, tuvo inscrita á su nombre en el Registro de la Propiedad como dueño la hacienda "Santa Cruz" de Bayamón compuesta de 314 cuerdas terreno: que sobre esa finca constituyó las siguientes hipotecas: por escritura de 19 de Agosto de 1893, para responder á Don José E. Marxuach de $4000 mejicanos en 18 de Agosto de 1895, con interés del diez por ciento: que en 28 de Marzo de 1894, Montilla confesó deber al mismo Marxuach otros $3000 mejicanos á pagar en 15 de Marzo de 1897, constituyendo nueva hipoteca sobre "Santa Cruz"; que en escritura de 9 de Agosto de 1894 hipotecó por tercera vez la misma finca por $4000 mejicanos á Marxuech, debiéndole por las tres hipotecas $11000 mejicanos, apreciando de común acuerdo la finca en $23000 mejicanos: que en 23 de Junio de 1897, Montilla y Paul Van Sickel celebraron contrato de arrendamiento de la finca "Santa Cruz" por $105 provinciales, no teniendo duración ese contrato, ni Montilla derecho á arrendar á otra persona, ni vender la finca cedida en arrendamiento, so pena de pago de daños y perjuicios que se causan á Van Sickel: que en 21 de Octubre de 1899 Van Sickel por sí y sin consentimiento del otro contratante, varió las condiciones de contrato, y modificó la cláusula 7a. comprometiéndose á tener arrendada la finca por más de seis años, y aunque él Registrador negó la inscripción de esa acta, el Tribunal de San Juan la ordenó, y apelada por el Registrador, recayó en ese expediente resolución ordenando la inscripción, aunque estimando nula la cláusula de no vender que contenía el contrato: que á principios de Diciembre de 1899, Marxuach, vencidas sus hipotecas, presentó demanda ejecutiva para su cobro; que en 16 de dicho mes y año, Paul Van Syckel requirió á Marxuach y á Montilla por el Notario según se refiere en el acto mencionada en el 1er. *Resultando*: que deseando Van Sickel quedarse con la finca acudió, á principios de 1900, á la Corte Pro-

visional de los Estados Unidos en demanda que se prohibiese á Marxuach cobrar su crédito, ejecutar la hacienda "Santa Cruz", ordenándole que recibiera el pago que Van Sickel ofrecía por el crédito contra Montilla, y á éste no procurase la venta de la propiedad, fundándose en la cláusula sobre prohibición de enagenar; que vendida, la finca, Montilla no tendría con que indemnizarle los daños y perjuicios por ser pobre; constándole era partícipe en una hermosa casa en San Juan, accediéndose por dicha Corte Provisional á lo por Van Sickel pedido: que en dichas peticiones y resoluciones no se incluyó se le declarase subrogado: que en 16 de Marzo de 1900, en escritura ante el Notario Palmer, insertándose la resolución de la Corte Provisional, se vió Marxuach compelido contra su voluntad á admitir el pago que por Montilla le hizo Van Sickel á pesar de la oposición del deudor no siendo esa escritura por ello de cesión de crédito hipotecario sino de aceptación de pago hecho por tercero; que en 1o. de Junio de 1900, ante el propio Notario Palmer, Paul Van Sickel y Sobrinos de Ezquiaga constituyeron la razón P. Van Sickel y Co. sociedad agrícola civil, para la industria de lechería, aportando Van Sickel como capital, el crédito que Marxuach tenía contra Montilla: que en Septiembre de 1901, P. Van Sickel y Compañía, presentaron ante este Tribunal ejecución por procedimiento hipotecario contra Montilla en cobro de lo adeudado á Marxuach y éste vendió á Van Sickel, y el Tribunal, por auto de once de Setiembre, dispuso el requerimiento de pago, que se verificó el 21 siguiendo la ejecución: y en 21 de Diciembre se notificó al dueño la adjudicación á P. Van Sickel y Comp., por 8740 pesos americanos después de deducidos los créditos preferentes, con lo cual no alcanzaba á cobrarse lo que reclamaba; siendo el derecho ser competente el Tribunal por ser secuela del ejecutivo de que conoció, siendo por ello el número 2 del artículo 459 de la Ley de Enjuiciamiento Civil, innecesaria la conciliación; que P. Van Sickel y Comp. no tenían acción para demandar en el ejecutivo que siguió porque no era acreedor hipotecario de Montilla, quien nada les debía y tenía que pagarle por acción real; que si Van Sickel pagó á Marxuach lo que á éste debía Montilla, lo hizo bajo las disposiciones del Código Civil y habiendo pagado contra la expresa voluntad de Montilla no se subrogó en los derechos del acreedor según el artículo 1158 del referido Código; que el numero 3 del artículo 1212 del repetido Código no es de aplicación á este caso por establecer sólo una presunción, no constando la expresa voluntad ú oposición del deudor, refiriéndose más

al tercero que tenga interés directo en la obligación, siendo por ello nula la escritura de cesión del crédito hipotecario y la por la cual Pablo Van Sickel constituyó la sociedad agrícola, porque de un acto nulo no pueden nacer actos ni efectos válidos, y como consecuencia de la aportación de ese crédito, su inscripción en el Registro de la Propiedad, sin ser aplicable el artículo 36 de la Ley Hipotecaria y sí el número 1 del 37; que la Corte Provisional no decretó, ni á ella se pidió, que con la cesión se entendiera subrogado en todos los derechos y acciones de Marxuach, citando además el artículo 175 del Reglamento de la Ley Hipotecaria y que por no haber consignado en su demanda ejecutiva P. Van Sickel y Ca. con exactitud, los hechos necesarios respecto á como pagó Marxuach, porque entónces no se hubiera admitido la demanda, debe pagar los daños y perjuicios causados, según el artículo 169 del Reglamento Hipotecario.

*Resultando*: que admitida la demanda y librado el oficio al Registrador para la nota marginal en la inscripción por el actor pedida, contestó Marxuach pidiendo se declarara la demanda sin lugar con las costas, estando conforme con los hechos de la demanda á él referentes, conforme con las estipulaciones de la escritura de 16 de Marzo de 1900, que desde luego ratifica en todas sus partes, el que fué hecho de una manera definitiva sin reservas de ningún género y que decretado por la Corte Provisional que recibiera de Van Sickel el montante de la ejecución y costas otorgó la escritura mencionada á la cual no tenía para que negarse porque se le ordenaba y porque con ella no le ocasionaba perjuicio; siendo el derecho los artículos 1232, 1267 y 1269 y 1270 del Código Civil y el 152 de la Ley Hipotecaria.

*Resultando*: que Paul Van Sickel y P. Van Sickel y Ca., contestaron se declare sin lugar la demanda con las costas; sentando como hechos: que Montilla constituyó las tres hipotecas á favor de Marxuach ya mencionadas: que posteriormente celebró el arrendamiento con Paul Van Sickel de la finca Santa Cruz limitada á 279 cuerdas; que el contrato fué sin término fijo y entendiendo que ese derecho debía asegurarse con relación al tercero y temeroso no se inscribiera por falta de expresión de su voluntad por menos durante seis años, otorgó el acta ya referida en resultandos anteriores haciéndolo constar como en ellos aparece: que el acta no contenía alteración sustancial ni accidental del arrendamiento y sí sólo su propósito dependiente de su voluntad exclusiva, no tenía que inter-

venir Montilla: que el Registrador no inscribió por no describir-
se la finca, contener el título el pacto ilícito de no enagenar ni hi-
potecar y no tener señalado término el arriendo: que el Tribu-
nal de Distrito ordenó la inscripción y apelada por el Registra-
dor confirmó el Supremo la orden de inscripción referida que se
llevó á efecto: que Montilla deseando desvirtuar los efectos del con-
trato celebró un convenio con Marxuach por el que éste se com-
prometió ejecutar por su crédito y en el remate satisfacer 24000
pesos provinciales obligándose Marxuach á no ceder ni traspasar
su crédito sin consentimiento de Montilla, y que las obligaciones
del acreedor cesaban si hubiese postor, teniendo el deudor un año
para buscar comprador y de no encontrarlo continuaría el apremio:
siendo la tendencia del convenio en que todos los beneficios eran
para el propietario y niguno para el acreedor, la cancelación del
contrato de arrendamiento porque habiéndose dirigido Don Fran-
cisco J. Marxuach 4 de Noviembre de 1897 á Paul Van Syckel ofre-
ciéndole la cesión de los créditos de su padre, es de afirmarlo: que
por ese convenio y gestiones judiciales de Marxuach en cobro de
sus créditos Paul Van Syckel requirió por acta notarial á Marxuach
y á Montilla en la forma expresada en el primer Resultando, es-
tableciendo por ello ante la Corte Provisional el juicio contra
Marxuach y Montilla, recayendo en 1 de Marzo de 1900, senten-
cia ordenando ceder y entregar á Pablo Van Syckel el crédito hipo-
tecario por 10500 pesos constituído á su favor por Montilla, reso-
lución que quedó enmendada en el sentido de que sus efectos limi-
tados á la fecha de 23 de Junio de 1903, se extendiesen á todo el
tiempo de que el arrendatario tuviese la finca, de acuerdo con las
condiciones del contrato de arriendo y actos notariales subsiguien-
tes: que esa sentencia quedó firme, y Marxuach en 16 de Marzo
de 1900, hizo la cesión y trasmisión á Paul Van Syckel de los cré-
ditos hipotecarios contra Montilla con sus respectivos derechos rea-
les de hipoteca: que el repetido Van Syckel constituyó la socie-
dad P. Van Syckel y Ca., aportando sus créditos hipotecarios con-
tra Montilla, viniendo por este la sociedad á ser acreedora hipote-
caria de la hacienda Santa Cruz: y como el deudor no pagó ni los
intereses, se incoó el ejecutivo siguiendo los trámites de la Ley
Hipotecaria y anunciada la subasta por 23000 pesos provinciales, valor
asignado de común acuerdo por las partes, siendo adjudicada la fin-
ca por las dos terceras partes deducidos $1541.39 centavos por res-
ponsabilidades preferentes y contribuciones: que Montilla estableció
ante esta Corte declarativo interesando la nulidad del juicio ejecu-

tivo, lo que no prosperó en este Tribunal, ni en el Supremo, como en otro litis entre Montilla y Van Syckel sobre inteligencia de una cláusula del contrato de arrendamiento; siendo el derecho de los artículos 4, 1228, 1269, 1425, 1528, del Código Civil, 152 Ley Hipotecaria, sentencias del Supremo de 2 de Julio de 1872, 30 de Abril de 1884, y 4 de Noviembre de 1897, que existiendo consentimiento, objeto y causa lícita y no conteniendo el contrato vicio alguno que lo anule ó invalide, la cesión es válida, y que la cosa juzgada se tiene por verdad.

*Resultando* : que abierto á prueba el juicio, de las del actor consta : una certificación del Secretario del Tribunal Supremo resolviendo la apelación del Registrador de la Propiedad de San Juan, revocando la nota puesta por dicho Registrador al pié de la escritura de arrendamiento de la finca Santa Cruz de Bayamón, otorgada por Montilla, ordenándole tome anotación preventiva de suspensión para la subsanación del defecto que contiene, si lo solicitare el interesado, por no poderse confundir el arrendamiento por tiempo indefinido, á que se refiere el artículo 1577 del Código Civil, pero siendo un defecto la inscripción por no poder describirse la finca arrendada, siendo subsanable puede y debe tomar anotación preventiva de suspensión para subsanarlo dentro del término de la Ley, no siendo inscribible respecto á la condición de no enagenar, ni la clásula prohibitoria de hipoteca, no implicando esto nulidad del título ni de la obligación, no constituye defecto que obste á la inscripción, apareciendo en la certificación que el Gobernador Militar Geo. W. Davis trasmitió los documentos relacionados con el contrato de arrendamiento celebrado entre Montilla y Van Syckel, suplicando la atención hacia el certificado del Tribunal de Distrito de San Juan y que urge sea determinado este asunto á la mayor brevedad, por existir gran número de casos análogos y el proceder del Registrador en negarse á inscribir, entorpece el curso de la transmisión de bienes, espera merecer haga un caso especial de él y se resuelva cuanto antes por la Corte Suprema.

*Resultando* : que igualmente acompaña el actor la resolución á una orden restrictiva temporal dictada por el Juez de la Corte Provisional de los Estados Unidos de esta Isla, de 20 de Diciembre de 1899, ordenando que Don José E. Marxuach, sus agentes, sirvientes, abogados y toda otra persona se abstengan de asistir ó tratar de asistir á Emilio Montilla á vender ó gravar la hacienda Santa Cruz, y de proceder á la continuación de la ejecución de la hipoteca: además, en 4 de Enero, 1900, presentó Marxuach moción para disolver la

orden restrictiva con sus manifestaciones, la que fué desestimada por el Tribunal en 10 de Enero de 1900, después de los argumentos de ambas partes, y que un injunction temporal sea emitido tal como solicita el demandante prestando fianza en la suma penal de 2500 pesos, y practicados otros actos, se dictó el fallo final, decretándose y ordenándose que Marxuach ceda y entregue á Van Syckel la hipoteca por diez mil quinientos pesos provinciales otorgada en 15 de Mayo de 1897 y también cualquiera suma de intereses sobre dicha suma desde este fallo hasta el pago, que Marxuach sea advertido que habrá de desistir de procedimiento alguno en la Corte de Distrito de San Juan y todo otro Tribunal por dicha hipoteca, y á desistir para siempre de llevar á efecto todos los convenios que pudiere haber hecho con el co-demandado Montilla para la venta de la propiedad hasta el 23 de Junio de 1903; advirtiéndose á Montilla debe someterse á todo lo acordado y convenido según el contrato de arriendo por él hecho con Van Syckel, que no deberá vender ó tratar de vender, gravar ó tratar de gravar dicha propiedad, ó parte de la misma, hasta la fecha antes indicada de 1903, y debe desistir de llevar á efecto y tratar de llevarlo cualquier convenio para la ejecución de la hipoteca en el Tribunal de Distrito de San Juan, ó en otro Tribunal, adicionándose el fallo á instancia de Van Syckel después de las palabras: "Hasta el 23 de Junio de 1903 ó hasta que el demandante cesare de ser arrendatario de la finca bajo y de acuerdo con el contrato de arriendo."

*Resultando*: que acompaña además copia autorizada de la escritura de 14 de Marzo de 1900, de cesión de los créditos hipotecarios por Marxuach á Van Syckel en la que copia la parte dispositiva de la sentencia de la Corte Provisional: copia autorizada de la notificación por el Notario á Montilla de la escritura de sociedad P. Van Syckel y Ca., á la que aportáron los créditos hipotecarios que fueron de Marxuach; copia certificada del acta de conciliación de 14 de Diciembre de 1901, extendida á instancia de Montilla contra Van Syckel que no compareció.

*Resultando*: que el Secretario de este Tribunal certifica el informe del Registrador de la Propiedad por dicho Tribunal pedido en el recurso gubernativo promovido por Van Syckel: otra de aparecer el juicio ejecutivo hipotecario por éste seguido contra Montilla el remate de la hacienda Santa Cruz se pidió y anunció con la condición entre otras de que había de respetarse el derecho real de arren-

damiento sobre 279 cuerdas de terrenos de dicha finca en favor de Van Syckel, pues así resulta del escrito presentado por el ejecutante y de la Gaceta.

*Resultando*: Que el Hon. Tesorero certifica consta de la valoración de 1902-1903, que declaró P. Van Syckel poseer en el barrio de Juan Sánchez de Bayamón, 316 cuerdas de terrenos valorados en 13,200 dollars, una casa vivienda de madera en 700, un almacén viejo en 200, un ranchón para lechería en 400, una casa en mal estado en 100; gravando dichos bienes un censo del estado por 287 pesos, una capellanía 230, y una hipoteca 407; tres masas y siete artesas antiguas 250 pesos; varios animales 3594 pesos, y dos carros de leche y una carreta 75 pesos á todo lo que se le asignó una contribución para el Tesoro Insular de 87 dollars 98 centavos; siendo la valoración de 1901-1902 correspondiente á Montilla, por 316 cuerdas en el mismo barrio y pueblo, 16,300, casa vivienda y un almacén antiguo los mismos precios para ellos antes expresados, el ranchón para lechería 500, tres masas 150, 7 artezas 350, gravados dichos bienes con censos é hipotecas por 8571 dollars de los que se le deducen 1140 que paga P. Van Syckel rebajándose de oficio á dichas propiedades 1500 dollars y por contribución 82 dollars 80 centavos al año.

*Resultando*: que de la prueba de confesión aparece, declarando Don José E. Marxuach que en la fecha en que escribió á nombre de su hijo la carta á Van Syckel, le convenían las negociaciones que le proponían y después no; que cuando presentó la ejecución, no le convenía ceder sus créditos á Van Syckel, y no lo hubiera hecho por tener un contrato con Montilla, y se negó á la pretensión de Van Syckel en el requerimiento que le hizo y en la Corte Provisional; y que al otorgar la cesión á Van Syckel, no fué voluntariamente y sí por el mandato de dicha Corte; y que el contrato privado con Montilla, fué para caso de subasta no hubiera licitador, no se le adjudicara por las dos terceras partes sino por la que estipuló, declarando el gestor de P. Van Syckel y Ca., cree ningún beneficio reportó á la sociedad más que continuar el arrendamiento de la finca; que sabe que en la actualidad está arrendada sin poder precisar el cánon siendo el beneficio el arrendamiento, sabe se ha cancelado una hipoteca, cuya cuantía no recuerda; que han mejorado la finca con plantaciones de malojillos y cree hay siembra de tabaco, partes estando destinados á pastos y frutos menores; que es socio de Sobrinos de Ezquiaga desde 1 de Enero de 1902, y regresó á ésta el 28 de Diciembre de ese año.

*Resultando* que de la prueba testifical del actor: que un testigo declara que cuando Marxuach presentó la ejecución estaba dispuesto á dar en subasta $28,000 provinciales libre de gravamen, y cuando Van Syckel ejecutó, no quiso acudir al remate por el gravamen del contrato de arrendamiento; cree un buen negocio adquirir la finca en $28,000 provinciales y está dispuesto á darlos: que ha tratado varias veces con Montilla y Van Syckel sobre la finca, pero éste ha obstaculizado las negociaciones. Repreguntado dijo ser socio de M. Pérez y Ca., que gira por $55,000, la finca era para la sociedad y las ofertas las hizo en 1900: otro testigo, que á fines de 1902, su hermana estaba dispuesta á dar por la finca 18,000 dollars al contado y repreguntado, que habló en nombre de su hermana con uno que cree dependiente de Ezquiaga que le dijo se dirigiera á Van Syckel.

*Resultando*: de la prueba del demandado la certificación de la sentencia de la Corte Provisional de los Estados Unidos en esta Isla, y otra copia auténtica de la escritura de cesión del crédito hipotecario otorgado por Marxuach á Paul Van Syckel en 16 de Marzo de 1900 ya referidos en la prueba del actor: certificación librada por el Secretario del Tribunal Supremo de la demanda promovida por Don Emilio Montilla contra P. Van Sickel y Ca., pidiendo la anulación del juicio ejecutivo sumarísimo por crédito hipotecario seguido por éste contra aquél y se condene además á que indemnice á Montilla los daños y perjuicios causados por la ejecución, parte dispositiva del fallo de este Tribunal declarando dicha demanda sin lugar y absolviendo á P. Van Syckel y Ca., con las costas al demandante, y parte dispositiva de la de casación declarando no haber lugar á resolver el recurso de casación interpuesto por Montilla, con las costas; certificación del auto adjudicando á P. Van Syckel y Compañía, por 8,740 dollars dos terceras partes de la tasación de la hacienda Santa Cruz, con deducción de las cargas anteriores; parte dispositiva de la sentencia declarando con lugar la demanda seguida por Don Pablo Van Syckel contra Don Emilio Montilla, y en su consecuencia obligado éste á pagar las contribuciones de la finca arrendada, excepción de las industrias que se explotan en la finca por Van Syckel, y la declaración de sin lugar á resolver el recurso de casación contra dicha sentencia interpuesto: y la certificación del Registrador de la Propiedad insertando literalmente en el número 14 de la hacienda Santa Cruz el contrato de arrendamiento á favor de Don Pablo Van Syckel á virtud de lo decretado por el Presidente de la Corte Suprema de Justicia; la nota del margen de esa inscripción del subarriendo otorgado por Van Syckel á Don Igna-

cio Rosales; la conversión de esa nota en nota definitiva, y finalmente un documento privado entre Don Fernando Montilla con Don José E. Marxuach para agregarlo y servir de prueba en la confesión y prueba testifical que propone.

Resultando: que Don José E. Marxuach puéstole de manifiesto la copia del documento privado mencionado en el anterior resultando, contesta que sin poderlo afirmar se le parece al que celebró con Montilla; y que ratifica las manifestaciones que hizo su abogado al contestar la demanda en su nombre; declarando el otro demandado Montilla que el contrato privado referido, celebrado entre él y Marxuach, la cláusula 2a. fué la base del contrato que fué en documento privado si bien no recuerda el número que tenía en el documento, que tuvo varios testigos y fué redactada por él y Marxuach: que ha tenido varios litigios sin recordar el número, con Van Syckel, diciendo esa cláusula 2a.: "Que en caso de remate no hubiere licitador ó no ofreciere más de 24,000 provinciales, dará Marxuach esa suma en las condiciones que se dirán:"; reconociendo el contrato privado un testigo, y dice escrito de su puño y letra, celebrado por Montilla con Marxuach y sacó una copia con el original que le dió Marxuach á Van Syckel, contestando en repreguntas no puede asegurar que las firmas que aparecen en el documento sean auténticas, y era empleado de Van Syckel: y otro testigo que puede ser fuera testigo del contrato privado referido, no puede recordar fuera el que se le pone de manifiesto la copia, no recordando si firmó á no, inclinándose á creer existía un documento del que es copia el de autos sin afirmar si está tomada al pié de la letra original; y otro testigo declara no tiene ni ha tenido nunca la gestión de los negocios de su padre: que la carta que se le presenta fué escrita por él y orden de su padre el demandado Marxuach, cuya carta de 31 de Noviembre de 1897, dirigida á Van Syckel, y firmada: Francisco J. Marxuach, dice: "Enterado tiene arrendada á Montilla la hacienda Santa Cruz, le ofrezco el traspaso de una hipoteca que tengo sobre la misma. Si le conviene avíseme para ponerme al habla con usted respecto á los detalles.

*Resultando*: que terminada la prueba, informaron los Letrados de las partes que al juicio oral acudieron, alegando lo que estimaron conveniente á sus respectivos derechos.

Siendo Ponente el Señor Juez Presidente Don Juan Morera Martínez.

*Considerando*: que aun cuando por el artículo 152 de la Ley Hi-

potecaria se determina que de toda enagenación ó cesión á un terce-
ro en todo ó en parte de un crédito hipotecario debe darse conocimien-
to al deudor; la omisión de esta formalidad no es causa de nulidad
de la escritura en que aquellas se otorguen y sí solo da derecho al ce-
sionario para demandar al cedente los perjuicios que haya podido su-
frir por consecuencia de la expresada falta, con arreglo á lo estable-
cido en el 154 de la propia Ley y los correlativos del Reglamento: y
en el caso de autos con mayor razón no procede porque la cesión es de-
bida á la resolución judicial de la Corte Provisional de los Estados
Unidos dictada á instancias de Van Syckel contra el acreedor hipote-
cario y el deudor de ese crédito Don Emilio Montilla Valdespino,
quien como demandado tuvo conocimiento de ella al dictarse.

*Considerando*: que la formalidad de la notificación se exige para
evitar que el deudor por ignorar el traspaso, pueda hacer el pago al
acreedor primitivo con perjuicio del cesionario, y he aquí por qué se
dictó el artículo 154 citado, del que se deduce que no estando reinte-
grado el acreedor hipotecario, habiendo llegado el caso de exigir el
importe de su crédito, y teniendo capacidad para enagenarlo, es ob-
vio pudo cederlo á un tercero conforme á dicha Ley Hipotecaria, se-
gún Marxuach manifiesta en la contestación de la demanda que rati-
ficó en el acto del juicio al decir "lo hizo no sólo porque lo ordenaba
la Corte Provisional cuanto porque dicho contrato no le ocasionaba
perjuicio alguno, puesto que le permitía cobrar en el acto lo que ha-
bría de cobrar á la terminación del juicio contra Montilla."

*Considerando*: que el acta de requerimiento de 16 de Diciembre de
1899 viene á corroborar lo expuesto porque Van Syckel pidió se requi-
riera á Marxuach le subrogue en sus derechos de acreedor hipoteca-
rio, cediéndole todos los que le corresponden y sus acciones contra el
deudor que es cabalmente lo que le otorga en la cesión de 16 de Marzo
de 1900, por leerse en ella "cede y trasmite los créditos hipotecarios
con sus respectivos derechos reales de hipoteca, intereses, gastos y cos-
tas judiciales, caso de reclamación, sin reserva alguna", teniendo por
tanto acción, por no estar todo esto comprendido en el artículo 1158
del Código Civil anterior, 1126 del vigente.

*Considerando*: que siendo válida y eficaz la cesión de crédito hipo-
tecario, objeto de este litis, por concurrir los requisitos esenciales pa-
ra su validez, no es posible declarar su nulidad ni la de la constitu-
ción de la sociedad agrícola P. Van Syckel y Ca., porque fundándose

la de ésta en la nulidad de la de aquélla, no siendo la cesión, no puede serlo la constitución de la sociedad; y subsistentes los créditos cedidos conservando ellos el carácter hipotecario, no procede cancelar sus inscripciones en el Registro de la Propiedad, como el actor solicita.

*Considerando* : que la nulidad del juicio ejecutivo hipotecario que siguió P. Van Syckel y Ca. contra Don Emilio Montilla Valdespino, y la nulidad de la adjudicación que en él se hizo de la hacienda Santa Cruz, así como la de las inscripciones por virtud de la adjudicación, son improcedentes porque en la demanda ejecutiva hipotecaria consignó P. Van Syckel y Ca. con exactitud los hechos necesarios en ella, como es de verse en el texto de dicha demanda, por expresarse que la cesión y traspaso se consignó en escritura de 16 de Marzo de 1900, por precio de $11,697.65 provinciales, detallando después los que corresponden al capital y los que á intereses vencidos no satisfechos al tipo del contrato, sin haberse sentado ni comprobado hecho alguno que demuestre las nulidades solicitadas.

*Considerando*, además, que existe sentencia ejecutoria declarando sin lugar la nulidad del mencionado juicio ejecutivo pedido en otra demanda por haberse infringido las órdenes militares referentes á la suspensión del procedimiento sumarísimo de la Ley Hipotecaria, haberse subastado la finca sin previa tasación pericial, por no haberse indicado por el ejecutante categóricamente las cantidades ciertas cobradas á cuenta del crédito porque ejecuta, ni hecho la protesta del párrafo último del artículo 169 de la Ley Hipotecaria, debiendo habérsele negado el requerimiento pedido.

*Considerando* : que por esos razonamientos la demanda debe declararse sin lugar en todos sus extremos con las costas al actor, y que ordenado al admitirse se cumpliera con el artículo 88 del Reglamento de la Ley Hipotecaria hay que ordenar se cumpla lo prescrito en el 89 para que cese de surtir sus efectos en el Registro aquella nota marginal.

*Fallamos* : que debemos declarar y declaramos sin lugar la demanda promovida por Don Emilio Montilla Valdespino en todos sus extremos, y en su virtud absolvemos de ella á Don José E. Marxuach, Don Pablo Van Syckel y P. Van Syckel y Comp. con las costas al demandante, y firme esta sentencia, cúmplase con el artículo 89 del Reglamento para la ejecución de la Ley Hipotecaria.''

En esta apelación el apelante Montilla sostiene las siguientes proposiciones, que á falta de señalamiento definitivo de errores, pueden deducirse del alegato impreso presentado por su abogado, á saber:

1o.  Que la declaración hecha por Van Syckel el 21 de Octubre de 1899, ante Notario, de que se proponía seguir por lo menos por seis años el contrato de arrendamiento que se le había otorgado por un periodo indefinido, es nula y sin ningún valor.

2o.  Que debe cancelarse en el Registro de la Propiedad la inscripción del contrato de arrendamiento otorgado por Montilla á favor de Van Syckel por ser dicha inscripción contraria á los intereses del apelante y no autorizada por la Ley.

3o.  Que el decreto dictado por la Corte Provisional de los Estados Unidos, el 1o. de Marzo de 1900, á favor de Van Syckel y en contra de Montilla y Marxuach, era erróneo, sin autorización legal, expedido sin la competencia de dicha Corte y completamente nulo.

4o.  Que el traspaso de la hipoteca sobre la hacienda Santa Cruz, hecho por Marxuach á favor de Van Syckel, el 16 de Marzo de 1900, de conformidad con el decreto de la Corte Provisional, no era voluntario y no produjo la subrogación de Van Syckel en los derechos del acreedor hipotecario por falta del consentimiento tanto de Montilla, el deudor hipotecario, cuanto de Marxuach, el acreedor.

5o.  Que el embargo y la venta de la hacienda, á consecuencia de la demanda de Van Syckel, después del traspaso de la hipoteca, eran el resultado de una confabulación, y estaban basados en una sentencia nula; y que el embargo y la venta mismos son nulos.

6o.  Que todas las inscripciones de los diferentes decretos y documentos, hechos sucesivamente en el Registro

de la Propiedad, son, por varias razones, ilegales y sin efecto.

7o. Que el Tribunal de Distrito incurrió en error al no tratar esta demanda como una demanda en equidad, y al resolver tan solo una de las muchas cuestiones importantes suscitadas en los autos.

Las varias proposiciones presentadas por el Abogado del apelante, se examinarán por el orden indicado.

1o: ¿Era la declaración hecha por Van Syckel, el 21 de Octubre de 1899, por la que se fijó la duración del contrato de arrendamiento por seis años ó más tiempo, un documento válido? Al examinar el contrato del 23 de Junio de 1897, vemos que es un contrato de arrendamiento de forma ordinaria, concediendo á Van Syckel la ocupación de la hacienda Santa Cruz, mediante el pago de un arriendo mensual de 105 pesos, ó sea más ó menos 65 dollars, y no tiene absolutamente nada de extraordinario, á excepción de la cláusula 7a. que dice lo siguiente:

"No teniendo duración ni término fijado este contrato, es condición precisa, que mientras el Señor Van Syckel cumpla con el pago del arrendamiento mensual, queda obligado el señor Montilla á respetar este contrato sin derecho á arrendar á otra persona, ni vender la finca cedida en arrendamiento, so pena del pago ó indemnización que por daños y perjuicios se causaren al arrendatario Sr. Van Syckel."

Deseando Van Syckel que su contrato de arrendamiento fuera inscrito en el Registro de la Propiedad, se encontró con que el párrafo 5 del artículo 2 de la Ley Hipotecaria no permitía la inscripción de un contrato de arrendamiento, á menos que su duración fuera de seis ó más años. Por consiguiente, se presentó el 21 de Octubre de 1899, ante un Notario Público, y otorgó un instrumento que dice lo que sigue:

"Que en 23 de Junio de 1897 y por escritura formalizada ante el presente Notario, celebró un contrato de arrendamiento de la finca rústica denominada "Santa Cruz", sita en el término municipal de

Bayamón, barrio de Juan Sánchez, con su dueño Don Emilio Montilla, en cuya escritura de arrendamiento no se fijaba la duración del contrato, dejándolo á la voluntad del exponente, que podría continuar en el arrendamiento del fundo todo el tiempo que quisiera, siempre. que pagase con puntualidad el canon estipulado de 105 pesos moneda corriente provincial; y conviniéndole hoy asegurar en forma eficaz y garantir los derechos que por ese contrato de arrendamiento adquiriere, siendo el término de su duración potestativo en el otorgante, por la presente, otorga:

Que se obliga á continuar dicho contrato, y al cumplimiento de las obligaciones que en el mismo contrajo, por el plazo de más de seis años, que empezaron desde la fecha de su celebración, sin que por eso se entienda que renuncia al derecho que el mismo contrato le concede, de continuar en el arrendamiento del fundo, vencidos que sean los seis años, siempre que continúe pagando el canon estipulado y cumpliendo las demás condiciones que su dicho contrato contrajo. Así lo dice, otorga y firma, después de lectura íntegra que hizo por sí mismo y de ratificarla; y yo, el Notario, la signo y firmo, dando fé de todo.—P. Van Syckel.—Signado.—Mauricio Guerra.''

Los abogados del apelante alegan como motivos de nulidad de este instrumento: 1o. ''que dicho instrumento contiene un contrato hecho por Van Syckel consigo mismo, siendo así que debe haber dos partes para el otorgamiento de un contrato.'' 2o. ''que dicho contrato constituye una alteración del contrato original, cuya alteración se ha efectuado por una de las partes contratantes del mismo, sin el consentimiento de Montilla.''

Debemos primeramente investigar la naturaleza de este instrumento. ¿Es esta una mera manifestación hecha por el arrendatario en el ejercicio de un derecho de elección que se le ha concedido en el contrato de arrendamiento, ó es dicha manifestación un contrato que sirve de suplemento al primero? El Juez Presidente Marshal define un contrato como ''un convenio en que una parte se compromete á hacer, ó á no hacer, determinada cosa.''

Sturges v. Crowninshield U. S. (4. Wheaton) 197.

Más tarde, el Juez Presidente Taney cita esta definición con la aprobación del Tribunal Supremo, en la célebre causa de "The Charles Bridge v. Warren Bridge, 36 U. S. (11 Peters) 572.

El eminente autor de textos, Dr. Parsons, virtualmente hace la misma definición de un contrato, siguiendo la misma opinión de los Tribunales, cuando dice: "un contrato es un convenio entre dos ó más partes, para hacer, ó no hacer, cosa alguna especificada." 1 Parsons on Contracts 5.

Sustancialmente la misma definición de un contrato está contenida en el Código Civil de Puerto Rico, Libro Cuarto, Título Segundo, que está copiada del Código Español.

Juzgada por esta regla, la manifestación hecha por Van Syckel, ante el Notario, no puede ser considerada como un contrato. Carece tanto de las partes necesarias cuanto de la estipulación esencial de compensación mútua. Ni aumenta ni disminuye las obligaciones del arrendador, ni las del arrendatario. Solamente se ha definido lo que antes era indefinido, y pone el contrato en condiciones de poder ser inscrito en el Registro de la Propiedad. Puesto que se ha hecho la manifestación de acuerdo con el derecho de elección concedido en el contrato de arrendamiento, y no siendo dicha manifestación un contrato, según las autoridades anteriormente citadas, es claro que no está sujeta á las críticas que respecto á ella se hacen en el alegato de los Abogados de la parte contraria; y las autoridades citadas en dicho alegato, no son aplicables.

Pero ¿cambia la manifestación hecha por Van Syckel, el contrato de arrendamiento, sin el consentimiento del arrendador? Vamos á ver. El artículo 7 de dicho contrato de arrendamiento dice lo siguiente:

"No teniendo duración ni término fijado este contrato, es condición precisa que mientras el Señor Van Syckel cumpla con el pago del

arrendamiento mensual, queda obligado el Sr. Montilla, á respetar este contrato, sin derecho á arrendar á otra persona ni vender la finca cedida en arrendamiento, so pena del pago ó indemnización que por daños y perjuicios se causaren al arrendatario, Sr. Van Syckel."

Esta cláusula dejó enteramente á la determinación de Van Syckel el tiempo que había de durar el contrato. El pudo terminarlo en cualquiera época mediante la omisión del pago del arriendo, ó en otra forma; pero Montilla no tuvo tal poder. Puede ser que fuera imprudente de parte del arrendador, el insertar esta estipulación en el contrato de arrendamiento; pero nosotros no tenemos facultades para hacer ó deshacer contratos; cuando éstos son legales y equitativos deben quedar tales como han sido otorgados por las partes mismas. Después del otorgamiento del documento conteniendo la referida manifestación del 21 de Octubre de 1899, el arrendatario no tuvo más facultades para desocupar la hacienda, sin avisar al arrendador con dos meses de anticipación, de las que tuvo con anterioridad á dicha fecha. Esta obligación se hizo aún más estricta, si era posible, en virtud del citado instrumento; á lo menos no fué atenuada ni disminuida por el mismo. Por consiguiente, no era una alteración del contrato el ejercer la elección que tenía la facultad de hacer en cualquiera época; y aún en el caso de que pudiera considerársele como un cambio del contrato, no causaba perjuicios al arrendador. Pero los abogados del apelante citan la Ley 3a., Título 10 del Libro 1 de la Novísima Recopilación, y el decreto de las Cortes de España de 8 de Junio de 1813, en virtud de los cuales pretenden que "los contratos de arrendamiento de fincas rústicas, otorgados por un periodo de tiempo indefinido, pueden disolverse á voluntad de cualquiera de las partes, siempre que una de ellas notifique á la otra, con un año de anticipación." Es evidente que dicha ley ha sido derogada por la adopción del Código Civil Español, en 1 de Enero de

1890, y otra vez, el 1 de Marzo de 1902, cuando se adoptó el actual Código Civil, en cada uno de dichos Códigos se encuentran dos Capítulos referentes á contratos de arrendamiento. Véanse los Estatutos Revisados de Puerto Rico, páginas 1092 á 1099, y el artículo derogatorio en la página 1181 del mismo tomo.

Por consiguiente no existía ningún derecho á favor del arrendador para terminar el contrato del arrendamiento, con aviso de un año de anticipación. No apareciendo una razón suficiente para que la citada manifestación sea ilegal, no puede ser anulada.

En cuanto á la 2a. proposición presentada por los Letrados defensores del apelante, pretendiendo que la inscripción del contrato de arrendamiento se había efectuado indebidamente, se vé facilmente que depende en gran manera del punto anterior.

Si dicho punto estuviese bien fundado, es claro que no habría lugar con arreglo al párrafo 5 del artículo 2 de la Ley Hipotecaria, á admitir el contrato de arrendamiento para su inscripción. Pero puesto que se considera válida la manifestación hecha por el arrendatario con respecto al periodo del arrendamiento, era procedente la admisión del contrato para su inscripción, y ésta no puede ahora anularse.

¿Hay motivo suficiente para considerar la sentencia de la Corte Provisional, como ilegal, dictada sin competencia por parte de dicha Corte, ó nula, según pretenden los abogados del apelante, en la tercera de las proposiciones anteriormente citadas? Cualesquiera que sean los errores en que haya incurrido aquella Corte, y aunque este Tribunal pudiera anular tal sentencia en la apelación contra una Corte sobre la cual tuviese jurisdicción de revisión, no se puede discutir la sentencia en esta demanda subsidiaria, excepto por fraude ó falta de jurisdicción. No consta nada en los autos que indique fraude alguno practicado por las partes en el pleito presen-

tado ante la Corte Provisional de los Estados Unidos. El decreto fué expedido *pro confeso,* con motivo de las alegaciones hechas, y no se interpuso recurso de apelación, como se hubiese podido hacer si se deseaba.

La jurisdicción conferida á la Corte Provisional, lo fué por la Orden General No. 88, serie de 1899, por la cual se creó dicho Tribunal. El exámen de dicha orden demostrará que la Corte creada tenía los mismos poderes judiciales de que estaban investidos los Tribunales de Circuito ó de Distrito de los Estados Unidos. No se suscita ninguna cuestión con respecto al poder que residía en el Gobernador Militar para expedir tal orden y crear el Tribunal. Puesto que no se ha suscitado tal cuestión, no es necesario discutirla.

Puesto que la Corte Provisional ha tenido jurisdicción tanto sobre las personas cuanto sobre el asunto, objeto del pleito, no se discutirá aquí su sentencia debidamente dictada.

Bajo la cuarta proposición sostenida por los abogados del apelante, se ataca el traspaso hecho por Marxuach á Van Syckel, y se sostiene que este último no podía subrogarse en los derechos del acreedor hiptoecario, mediante dicho documento. El texto completo del citado instrumento dice lo que sigue:

### NÚMERO CIENTO CUARENTA Y NUEVE.

En la Ciudad de San Juan Bautista de Puerto Rico, Estados Unidos Unidos de América, á diez y seis de Marzo de mil novecientos.

### ANTE MÍ

Santiago R. Palmer, Notario del Colegio de Puerto Rico, con vecindad y residencia en esta Ciudad y estudio abierto en la casa número veinte y tres de la calle de la Fortaleza,

### COMPARECEN

de una parte

Don José Eleuterio Marxuach y Echevarría, mayor de edad, casado, propietario y vecino de esta Ciudad.

y de otra parte

Don Paul Van Syckel, mayor de edad, casado, ingeniero mecánico, quien manifiesta ser ciudadano de los Estados Unidos de América, domiciliado en el pueblo de Bayamón.

Los comparecientes tienen á mi juicio la capacidad legal necesaria para otorgar la presente escritura de cesión de créditos, y exponen.

*Primero*: que es objeto de la presente escritura una finca rústica o hacienda de cañas nombrada "Santa Cruz", que radica en el barrio de Juan Sánchez término municipal de Bayamón, registro de la Propiedad de esta Ciudad; tiene una cabida de trescientas catorce cuerdas de terrenos, equivalentes á ciento trece hectáreas, cuarenta y una áreas y cuarenta y seis centiáreas, y colinda por el saliente con la hacienda "Caridad" que fué de Don José Escolástico Berríos, dividiéndola el río de Bayamón, por el Norte con la hacienda Santa Bárbara de Don Miguel López; por el Poniente con el pueblo y terrenos de Don Juan Basilio Núñez y por el Sud con la Isleta del mismo Don Juan Basilio Núñez.

*Segundo*: que Don José Eleuterio Marxuach es dueño de tres créditos hipotecarios á cuyo pago se encuentra afecta la finca rústica descrita, y le son adeudados por Don Emilio Montilla y Valdespino, mayor de edad, casado y vecino de esta Ciudad, quien los constituyó por el término, con los intereses, por los capitales y con los pactos y obligaciones que resultan de los siguientes

## TÍTULOS.

*Tercero*: Que vencidas las obligaciones de que responden las tres hipotecas relacionadas, el compareciente Sr. Marxuach, con los títulos de su constitución, certificación del Registrador de la Propiedad comprendiendo que no constan cancelados dichos gravámenes hipotecarios, ni se hallan pendientes de cancelación, según el Diario, copia de las inscripciones de los demás gravámenes á que se encuentra afecta la finca hipotecada y constancia de no haber sido trasmitida á tercera persona y con el escrito exigido por el artículo 128 de la Ley Hipotecaria autorizado por el Letrado Don Juan Hernández López y para los efectos de la tramitación designado por su agente á Don

Emigdio S. Ginorio por ante el Tribunal de Distrito de esta Ciudad promovió el procedimiento para hacer efectivos los mencionados créditos hipotecarios por los once mil pesos de sus capitales, novecientos sesenta y tres, noventa centavos de intereses vencidos y las costas hasta un mil cuatrocientos pesos señalados para responder de ellas, recayendo con fecha diez y ocho de Diciembre de mil ochocientos noventa y nueve, la misma del escrito presentado, providencia del Tribunal mandando requerir á Don Emilio Montilla y Valdespino, para que dentro de treinta días pagase á Don José Eleuterio Marxuach la suma reclamada, con apercibimiento de proceder al remate de la finca hipotecada si no lo verificaba; auto que se notificó al deudor Sr. Montilla con fecha del veinte de dicho mes y año, y en cuyo estado de apremio se encuentra el procedimiento ejecutivo iniciado.

*Cuarto*: Que durante su tramitación el compareciente Don Paul Van Syckel, con motivo de cierto contrato de arrendamiento sobre la hacienda ''Santa Cruz'' por ante la Corte Provisional de los Estados Unidos para el Departamento de Puerto Rico demandó al dueño de la mencionada finca Don Emilio Montilla Valdespino y á su acreedor hipotecario Don José E. Marxuach, sentenciándose por la Corte Provisional por decreto de día primero de los corrientes, entre otros extremos, que el Sr. Marxuach trasmitiese al Sr. Van Syckel sus derechos hipotecarios contra Don Emilio Montilla y la hacienda ''Santa Cruz'' descrita según las disposiciones de dicha sentencia, que traducida al castellano me exhiben y dice así:

''En su consecuencia, se considera, decreta y ordena, que el demandado Don José Marxuach ceda y entregue á P. Van Syckel la nota é hipoteca por 10,500 pesos provinciales hecha por Don Emilio Montilla á favor de Don José Marxuach y cuya hipoteca es un derecho sobre el terreno descrito en el bill de demanda. Tan pronto como el demandante P. Van Syckel pague al demandado Marxuach la suma de 11,643 once mil seiscientos cuarenta y tres pesos, cuarenta y un centavos moneda provincial, á que asciende la hipoteca é intereses devengados. Además abonará el diez y medio por ciento de interés anual, desde la fecha de este decreto hasta la del pago. Además se considera, juzga y decreta que previo recibo de lo mencionado anteriormente, el demandado Don José Marxuach se abstenga y se le prohibe por la presente proceder en forma alguna ante la Corte de Distrito de San Juan ni en cualquiera otra por su hipoteca, como tampoco llevar á efecto ningún acuerdo que pueda tener con el otro demandado Montilla, de ayudarle por cualquier medio á la

venta de su predio en perjuicio del demandante como arrendatario de dicha propiedad.

Literalmente concuerda lo inserto con la traducción que me han presentado las partes, á que me remito y les devuelvo.

En su consecuencia, llevan á efecto lo ordenado por la Corte Provisional en la forma que otorgan y consignan en las siguientes cláusulas.:

## LIQUIDACIÓN.

PRIMERA: Proceden á liquidar de mutuo acuerdo las sumas que ha de percibir el Sr. Marxuach por capitales é intereses y las fijan en las siguientes:

Por capitales, once mil pesos moneda corriente en las fechas de las constituciones de las hipotecas reseñadas; siendo entonces la mejicana, descuentan el cinco por ciento de su canje por la provincial y resulta su equivalencia ser diez mil cuatrocientos cincuenta pesos provinciales.

Por intereses del capital anterior desde Febrero de mil ochocientos noventa y nueve hasta Febrero veinte y ocho del año corriente, mil ciento noventa y tres pesos cuarenta y un centavos provinciales que sumados al capital, totalizan once mil seiscientos cuarenta y tres pesos cuarenta y un centavos moneda provincial, á la que se añaden cincuenta y cuatro pesos, veinte y cuatro centavos por los intereses desde el día primero de los corrientes á hoy, al diez y medio por ciento anual, según el tipo señalado por la Corte Provisional, y resultan once mil seiscientos noventa y siete pesos sesenta y cinco centavos, moneda provincial, suma líquida con la que están conformes ambas partes.

## PAGO.

SEGUNDA: Dichos once mil seiscientos noventa y siete pesos, sesenta y cinco centavos, en este acto á mi presencia y la de los testigos instrumentales, Don Paul Van Syckel los entrega á Don José Eleuterio Marxuach y Echevarría en billetes del Banco Español de Puerto, once mil seiscientos noventa y cinco pesos, y en moneda de plata del cuño de Puerto Rico dos pesos, setenta y cinco centavos; y revisados, examinados y contados por el Sr. Marxuach recibe la suma entregádale, y de ella otorga formal carta de pago al Sr. Van Syckel.

## CESIÓN.

TERCERA: Por la cantidad recibida Don José Eleuterio Marxuach y Echevarría cede y trasmite á favor de Don Paul Van Syckel los créditos hipotecarios que le resultan á su favor de las escrituras é inscripciones citadas en el número segundo de la presente con sus respectivos derechos reales de hipoteca, el de cobrar sus intereses vencidos y á vencer, el de indemnización de gastos y costas caso de reclamación judicial, y todos los demás principales y accesorios, reales y personales que le correspondan contra la finca hipotecada y contra el deudor Don Emilio Montilla y Valdespino, sin ninguna reservación.

## RESPONSABILIDAD.

CUARTA: El cedente Sr. Marxuach por serlo de buena fe, sólo es responsable de la existencia y legitimidad de los créditos, con arreglo al artículo mil quinientos veinte y nueve del Código Civil vigente en Puerto Rico.

## GASTOS.

QUINTA: Serán de cuenta y á cargo del cesionario Sr. Van Syckel todos los honorarios y gastos de la escritura, de su copia, inscripciones, su notificación al deudor, aunque la hará ó solicitará el cedente y los demás que la misma origine.

## DOMICILIO.

SEXTA: Para todas las reclamaciones, notificaciones, citaciones y demás actos privados ó judiciales á que diere lugar el presente contrato, las partes señalan esta ciudad como su domicilio común y se someten expresamente á la jurisdicción de sus Jueces y Tribunales ordinarios, renunciando expresamente desde ahora á todo fuero personal y domicilio distinto.

## ACEPTACIÓN.

SEPTIMA: Don Paul Van Syckel acepta la cesión y sus efectos con todas las circunstancias consignadas en esta escritura.

### ADVERTENCIAS.

Yo el Notario hago constar haber advertido á las partes: que de la presente cesión debe darse conocimiento al deudor de los créditos cedidos y el cedente será responsable de los perjuicios que la omisión de este requisito ocasione al cesionario.

Que si deja de inscribirse una copia de este documento en el Registro de la Propiedad de esta Ciudad no perjudicará á tercero ni será admisible en los Tribunales, Consejos y Oficinas del Gobierno, si el objeto de su presentación fuere hacer efectivo en perjuicio de tercero, el derecho que debió ser inscrito salvo en los dos casos de excepción que comprende el artículo trescientos ochenta y nueve de la ley Hipotecaria.

### OTORGAMIENTO.

Así lo otorgan Don Jossé Eleuterio Marxuach y Echevarría y Don Paul Van Syckel, ante mí, siendo testigos instrumentales los vecinos de esta Ciudad Don Miguel Luis Arsuaga y don Emigdio S. Ginorio.

Leida la presente escritura á los otorgantes y á los testigos, les advertí que tienen el derecho de leerla por sí, manifiestan que quedan bien enterados de su contenido, en el mismo se ratifican los otorgantes y firman en unión de los testigos: de lo cual, de conocer á los otorgantes y de todo lo demás que he asegurado ó referido en este instrumento público que autorizo en siete pliegos de papel del Colegio Notarial, números veinte y un mil ciento ochenta y seis, sus tres siguientes, yo el Notario doy fé.—José E. Marxuach.—Paul Van Syckel.—Miguel L. Arsuaga.—Emigdio S. Ginorio.—Signado y firmado.—Santiago R. Palmer.

En su fecha libré primera copia al Señor Van Syckel en seis pliegos de papel del Colegio números 22, 766, y sus siguientes, doy fé.—Palmer. Es primera copia, conforme con el original de su contenido, que obra en mi protocolo general corriente bajo el número ciento cuarenta y nueve; en fe de ello y á pedimento de Don Emilio Montilla y Valdespino, la expido en siete pliegos de papel en la Ciudad de San Juan de Puerto Rico, á tres de Octubre de mil novecientos.

Las objeciones hechas por los abogados del apelante, contra la validez del traspaso de la hipoteca, cuyo traspaso en algunos de los alegatos se llama cesión. son dos:

1o.—Era necesario tanto el consentimiento del deudor Montilla, que había dado la hipoteca, cuanto el del acreedor hipotecario Marxuach, para que fuera válido el traspaso, ó á lo menos, para que produjera una subrogación.

2o.—No se ha hecho, en la escritura de traspaso, especificación expresa de una subrogación, y dicho documento es, por consiguiente, ineficaz para producir una subrogación, aunque tanto el dador de la hipoteca cuanto el acreedor hipotecario hayan consentido en ello.

En apoyo de su primera objeción, los abogados del apelante hacen referencia á los artículos 1126 y 1127 del Código Civil, que no hablan de subrogaciones sino de pagos; y tratan el traspaso que Marxuach hizo de la hipoteca, en virtud de la orden de la Corte Provisional, como si fuese simplemente un recibo dado á Van Syckel por la cantidad que había pagado. La transacción no era un simple pago, y los artículos del Código Civil citados, no tienen aplicación al caso, objeto de la discusión.

Los Letrados defensores del apelante también citan los artículo 1177 y 1178 del Código Civil, que dicen lo que sigue:

"Artículo 1177.—La subrogación de un tercero en los derechos del acreedor no puede presumirse fuera de los casos expresamente mencionados en este Código.

En los demás casos será preciso establecerla con claridad para que produzca efecto.

Artículo 1178.—Se presumirá que hay subrogación:

1. Cuando un acreedor pague á otro acreedor preferente.

2. Cuando un tercero, no interesado en la obligación, pague con aprobación expresa ó tácita del deudor.

3. Cuando pague el que tenga interés en el cumplimiento de la obligación, salvo los efectos de la confusión en cuanto á la porción que le corresponda.

Estos artículos del Código Civil serían ciertamente aplicables, si se intentase *presumir* una subrogación de

Van Syckel en los derechos de Marxuach, en virtud de la hipoteca. Pero este no es el caso aquí. No se insiste en una presunción, sino se sostiene que el traspaso de la hipoteca mediante escritura debidamente otorgada, prueba la subrogación, con arreglo al artículo 152 de la Ley Hipotecaria. Dicho artículo dice lo siguiente:

"Artículo 152.—El crédito hipotecario puede enagenarse ó cederse á un tercero en todo ó en parte, siempre que se haga en escritura pública de que se dé conocimiento al deudor, y que se inscriba en el Registro."

Esta Ley no está en contradicción con el Código Civil, y no ha sido derogada ni modificada por el mismo. Los intereses del deudor ó dador de la hipoteca, quedan estrictamente guardados por la segunda cláusula; y la parte á quien se traspasa la hipoteca es protegida por la tercera cláusula que le subroga en todos los derechos del transferente ó acreedor hipotecario. No es necesario el consentimiento del deudor, porque no se aumentan sus gravámenes, ni se extienden sus obligaciones. No hay necesidad de hacer en el instrumento mismo, una expresa especificación de la subrogación, porque la ley hace que se deduzca la subrogación, como conclusión legal, del mismo hecho del traspaso. No es necesario otro requisito sino el que se haga el traspaso mediante documento público del que tenga aviso el deudor, y que esté inscrito en el Registro de la Propiedad. Resulta, pues, claramente, que la subrogación era completa.

*Quinta.* Los abogados del apelante sostienen que este Tribunal debe anular la venta efectuada con autorización judicial, en virtud de la demanda presentada por Van Syckel después de habérsele traspasado la hipoteca á este último; y pretenden que dicha venta fué el resultado de una confabulación, y que estuvo basada en una sentencia nula. Si hubo confabulación alguna, debe presentarse

una prueba más eficaz de la que consta en los autos traídos ante este Tribunal. La simple formación de una sociedad y la inscripción de documentos debidamente otorgados, ó bien cualesquiera otros actos formales y legítimos, ejecutados por una ó varias personas, en el esfuerzo de proteger sus derechos ó fomentar sus beneficios pecuniarios, no pueden considerarse como una confabulación, meramente porque los resultados sean perjudiciales á otra persona. Bajo el punto de vista desde el cual nosotros miramos la sentencia dictada por el Tribunal, según se ha indicado anteriormente, no puede considerársela como nula de manera que apoye la afirmación de los abogados del demandante. Siendo este nuestro parecer respecto á las razones alegadas para la nulación de la venta efectuada con autorización judicial, debemos dejar dicha venta en pie, y no tocar los derechos adquiridos por los demandados en virtud de la misma.

· La *sexta* proposición con respecto á la ilegalidad y falta de eficacia de las varias inscripciones de los diferentes documentos y decretos, seguiría como corolario de las anteriores, si se las hubiese sostenido; pero como no se las considera sostenibles, las inscripciones de que se quejan los abogados del demandante, deben asimismo considerarse como válidas. Dichas inscripciones ó quedan en pie, ó resultan nulas con los documentos á que se refieren.

La objeción principal hecha por los referidos abogados contra dichas inscripciones, se dirige contra la del contrato de arrendamiento á que se ha hecho referencia anteriormente en la presente. No podemos hacer más para justificar aquel procedimiento, que hacer referencia al dictámen emitido con respecto á ese asunto, por el Presidente de este Tribunal, cuando conoció del mismo, en virtud del recurso de apelación administrativo interpuesto contra la negativa del Registrador de la Propiedad, á ad-

mitir dicho contrato de arrendamiento para su inscripción.

Dicho dictámen tiene nuestra completa y formal aprobación no obstante las críticas de que ha sido objeto. La carta del Comandante Militar que se halla unida á los autos de esta causa, no forma propiamente parte de los mismos, y no ha sido tomada en consideración.

Esto nos lleva al *séptimo* y último punto que los distinguidos Letrados, defensores de Montilla, han presentado en su alegato impreso.

¿Debía el Tribunal de Distrito haber tratado la presente demanda como una demanda de equidad, y haber resuelto más de las cuestiones que se suscitan en el curso del litigio, que las consideradas en la sentencia contra la cual se ha interpuesto este recurso de apelación?

Comparando la sentencia del Tribunal de Distrito con la petición contenida en la manifestación, aparecerá suficientemente el que no se ha descuidado ni desatendido á ninguna cuestión esencial presentada en las alegaciones; y hasta donde puede verse, se ha observado sustancialmente el artículo 358 del antiguo Código de Enjuiciamiento Civil.

El artículo de la ley puertorriqueña en que está basada la primera parte de esta proposición, dice lo siguiente:

"Cuando no haya ley aplicable al caso, el Tribunal resolverá conforme á equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos."

Código Civil, art. 7, párrafo 2o. Est. Rev. de P. R., página 816.

En este punto, es importante averiguar cual era la naturaleza de esta demanda en el Tribunal inferior y como ha llegado á este Tribunal. Si era un "action at Law" (demanda, para cuya decisión hay leyes aplicables al caso de que se trata en la misma) en el Tribunal inferior debe serlo en esta Corte. Si era un "suit in equity"

(pleito, para cuya decisión no hay ley aplicable, y que se resuelve conforme á equidad) cuando fué resuelto por el Tribunal inferior debe serlo aquí. No podemos, bajo los Estatutos de Puerto Rico ni bajo ningún sistema de jurisprudencia que conocemos, pasar, en la lista de causas, una causa del lado de la Ley al de la Equidad, después que dicha causa haya sido juzgada, oida y resuelta por el Tribunal de Distrito. Examinemos, pues, el escrito mediante el cual se entabló la presente demanda, y después, los trámites y la sentencia final, basados en la misma.

Las partes esenciales del escrito dicen lo que sigue:

"Por todo lo expuesto suplico al Tribunal que habiéndome por presentada esta demanda con sus copias y á mí por parte en nombre de Don Emilio Montilla y Valdespino, se sirva admitirla mandándola sustanciar por los trámites del juicio declarativo ordinario con citación y emplazamiento de Don José E. Marxuach, de Don Pablo Van Syckel y Paul y también de la sociedad agrícola P. Van Syckel y Comp., para que en término de veinte días la contesten: y en definitiva dictar sentencia declarando. nulas las escrituras de diez y seis de Marzo de 1900 en cuanto por ella se traspasa la garantía hipotecaria constituída á favor de Marxuach sobre la hacienda Santa Cruz, la de 1o. de Junio del mismo año de constitución de la sociedad demandada, en cuanto á ella se aportó como hipotecario un crédito que no lo era: nulas las inscripciones por virtud de dichas escrituras practicadas en el Registro de la Propiedad: declarar que ni Pablo Van Syckel ni la sociedad "P. Van Syckel y Compañía" han sido nunca acreedores hipotecarios de Don Emilio Montilla como subrogados en los derechos de Don José E. Marxuach, y en su consecuencia que sólo tiene dicha sociedad una acción personal contra el Señor Montilla para repetir contra él, por la cantidad en que haya podido beneficiarle el pago que en su nombre hizo el socio Van Syckel á Marxuach: nulo el juicio ejecutivo hipotecario que la propia sociedad siguió contra mi defendido, nula la adjudicación que á ella se hizo de la hacienda "Santa Cruz" y nulas también las inscripciones que por virtud de la adjudicación hayan sido hechas en el Registro de la Propiedad: declarar extinguidas con arreglo á ley las hipotécas constituídas sobre el fundo Santa Cruz á favor de Marxuach, disponiendo la cancelación de las inscripciones de dichas hipote-

cas; condenar á P. Van Syckel y Compañía á indemnizar los da-
ños y perjuicios que haya causado por el ejecutivo que indebidamente
tramitó, y al pago de las costas.

1. Otrosí: Solicito que en su oportunidad se abra este juicio á
prueba, y

Suplico al Tribunal se sirva tener por hecha esta manifestación.

2. Otrosí: Como en este juicio se reclama la nulidad del jui-
cio ejecutivo hipotecario seguido por P. Van Syckel y Compañía
contra Don Emilio Montilla y por ende la nulidad de la adju-
dicación de la hacienda Santa Cruz y de la inscripción de la
misma en el Registro de la Propiedad de San Juan, se está en el
caso de hacer aplicación del artículo 88 del Reglamento de la vi-
gente Ley Hipotecaria, y en su consecuencia,

Suplico al Tribunal que con la urgencia que el caso requiere
se libre por mi conducto oficio al Sr. Registrador de la Propiedad
de San Juan poniendo en su conocimiento la nulidad reclamada
y ordenando que dentro del plazo que dicho artículo señala pon-
ga la correspondiente nota marginal de nulidad á la inscripción
de la adjudicación de la hacienda "Santa Cruz", cuya descripción
consta en esta demanda, y la que se describirá convenientemente
en el oficio que se librare.

3. Otrosí: Como Don José E. Marxuach y la sociedad agrícola
"P. Van Syckel y Compañía" tienen su domicilio en esta Ciudad,
por mi conducto debe librarse carta-orden al Juzgado Municipal
de San Francisco para su citación entendiéndose la de la Socie-
dad demandada con cualquiera de los gestores de la mercantil "So-
brinos de Ezquiaga", porque á su vez lo son de la agrícola contra
la presente se dirige.

Suplico al Tribunal se sirva disponer se libre y se me entre-
gue la carta-orden que intereso.

4. Otrosí: Don Pablo Van Syckel y Paul ha de ser citado por
su derecho propio, y como ignoro su actual residencia, debe serlo
por medio de edictos que se publicarán en cualquier periódico de
la localidad, por lo cual suplico al Tribunal ordene al Sr. Secre-
tario que expida y me entregue para su inserción en algún pe-
riódico local el edicto para la citación de Don Pablo Van Syckel y
Paul."

La presente, al igual de todas las demás demandas ante
los Tribunales de Puerto Rico, debe considerarse como
demanda deducida con arreglo á los Códigos y no es, ha-

blando en sentido estricto, ni un "action at Law" ni un "suit in Equity."

No hay gran diferencia en nuestro anterior Código de Enjuiciamiento Civil, y absolutamente ninguna en el actual, entre tales demandas y las entabladas con arreglo al Código de California. Lo que el Sr. Pomeroy dice de las demandas deducidas con arreglo á aquel Código, es aplicable á las nuestras, á saber:

"Todas las formas de demanda basadas en la Ley común, quedan abolidas, y se establece una acción civil para todos los fines de reparación: sin embargo, los procedimientos en esta acción civil podrán ser (1) ú ordinarios, ó (2) equitativos. El demandante podrá seguir su demanda mediante procedimientos equitativos en todos los asuntos para los cuales eran competentes los Tribunales de equidad, antes de la adopción del Código, y deberá proceder así en todos los casos para los cuales era exclusiva tal competencia. En todos los demás casos el demandante debe seguir su demanda mediante los procedimientos ordinarios. El demandante indica mediante la fórmula "en procedimientos ordinarios", ó "en procedimientos de equidad", puesta al principio de su petición ó demanda, la clase á que ésta pertenezca. Las disposiciones del Código que regulan el modo de seguir las demandas se refieren á ambas clases de procedimiento, á no ser que conste expresamente lo contrario. En efecto, la única distinción verdadera que existe entre dichas clases de procedimientos, es que hay que inscribir las respectivas causas en diferentes listas del Tribunal: de manera que los pleitos de una clase, sean juzgados por el Jurado, mientras que los de la otra, son juzgados por el Juez sin jurado, y que puede practicarse la prueba en procedimientos equitativos, mediante deposición, en lugar de exámen oral en plena audiencia."
Pomeroy on Cal. Code p. 6.

Por supuesto, el último párrafo respecto á Jurados, no tiene aplicación aquí, donde no tenemos jurados en causas civiles.

La única referencia á equidad, que se hace en nuestros Códigos, se encuentra en el artículo 7 del Código Civil adoptado en 1o. de Marzo de 1902. Dicho artículo es como sigue:

"Cuando no haya ley aplicable al caso, el Tribunal resolverá conforme á equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales de derecho, y los usos y costumbres aceptados y establecidos."

Esta disposición no puede considerarse como adoptando ó estableciendo un sistema de equidad. Un sistema de jurisprudencia de equidad, tal como el que se administra en las Cortes Federales de los Estados Unidos, y en algunos de los Tribunales de Estado, no cabe en el sistema de leyes puesto en vigor y practicado en los Tribunales Insulares de Puerto Rico. Es de presumirse que los abogados del apelante solo tuvieron la intención de insistir en que el Tribunal debía aplicar á esta causa los principios de justicia universalmente reconocidos y aprobados por las ilustradas conciencias de todas las personas honradas y observantes de las leyes.

Pero, si los distinguidos Letrados realmente sostienen que los principios de equidad deben ser aplicados á esta causa, deben procurar que su cliente se halle dentro de sus reglas, induciéndole primero á que él ejerza la equidad para que pueda después solicitarla con éxito. Esto lo obligaría á ofrecer á Van Syckel el dinero pagado á Marxuach, por el traspaso de la hipoteca sobre la hacienda Santa Cruz, con todos los intereses devengados por dicha cantidad. Nada que no fuera esto, sería justo, y si el apelado se negare á recibir el dinero, el apelante debiera depositarlo en el Tribunal, sujeto á su reclamación. Entonces podría exigir que se cancelase la hipoteca, y estaría en el caso de poder atacar el contrato de arrendamiento, si lo deseaba hacer. Mientras no haya dado este primer paso, es innecesario trazar el camino que habría de seguir después.

Pero no se nos exige, por el citado artículo del Código Civil, que apliquemos los principios de equidad, excepto en los casos en que no existan leyes escritas. Según nues-

tro parecer respecto al presente caso, las leyes escritas de Puerto Rico son amplias para guiarnos en la determinación de los derechos de las partes. Los Tribunales han dedicado mucho tiempo y atención al estudio é interpretación de estas leyes y su aplicación á las varias causas entabladas por las partes empeñadas en este litigio; y no se encuentra ningún error esencial en la sentencia del Tribunal de Distrito, que se nos ha presentado para su revisión y que se nos pide revoquemos. Cualesquiera molestias que haya sufrido el apelante, deben atribuirse no á su opresión por parte de otros, ni á errores por parte de los Tribunales, sino á su propio descuido y falta de previsión en los negocios. Contra éstos no tiene remedio este Tribunal.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández, Figueras y Wolf.