RAMÓN COLÓN, demandante y apelado, *v.* LOS ESPOSOS FRANCISCO SANTIAGO y CARMEN COLÓN, demandados y apelantes.

Núm. 8980.—*Sometido:* Noviembre 9, 1944. *Resuelto:* Diciembre 18, 1944.

---

*E. Tristani, Jr.,* abogado de los apelantes; *J. I. Fernández Segarra,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Ramón Colón estableció acción de desahucio en precario contra los esposos Francisco Santiago y Carmen Colón. Alegó en su demanda que es legítimo dueño de una casa; y que los esposos demandados detentan desde hace algún tiempo la posesión de dicha casa, ocupándola como su residencia, precariamente, o sea, sin contrato alguno y sin pagar canon o merced por dicha ocupación y contra la expresa voluntad de su dueño, el demandante.

En el acto de la primera comparecencia se ofreció prueba por el demandante en apoyo de sus alegaciones y los demandados radicaron su contestación contentiva de excepción previa, contestación negando los hechos alegados en la demanda y estableciendo defensas especiales. Visto el caso en sus méritos la corte de distrito falló en favor del demandante.

Contra esta decisión es que se ha interpuesto el presente recurso de apelación imputando a la corte sentenciadora la comisión de cuatro errores. Consideraremos el error señalado en cuarto término por entender que, de haber sido cometido, causará la revocación de la sentencia recurrida. Dicho señalamiento lee así:

"IV. Cometió error la corte al estimar que no hubo conflicto de título de acuerdo con las pruebas de ambas partes."

La corte inferior al resolver el caso en la forma en que lo hizo negó la existencia de un conflicto de título. Luego,

el punto a resolver por nosotros es, si la contención de dueño planteada por los demandados es tan evidentemente insustancial e insostenible que no merezca seria consideración o si la prueba en apoyo de la misma era suficiente para suscitar una cuestión digna de ser resuelta en una acción ordinaria.

Haremos un resumen de la evidencia aducida por una y otra parte.

El demandante ofreció como prueba documental, (1) una copia certificada de una escritura otorgada el 7 de octubre de 1943, en Juana Díaz, por el carpintero Alejandro Colón, a favor del demandante, en la cual se expresa que Alejandro Colón construyó la casa de que se trata en este pleito por orden de y para Ramón Colón, el demandante; y (2) unos borderós que se alega fueron expedidos por el almacén que vendió la madera utilizada para la construcción de la casa. Encontramos que estos borderós no fueron efectivamente presentados.

Como prueba testifical, el demandante ofreció el testimonio de varios testigos, quienes declararon:

Ramón Colón—Que es dueño de la casa ocupada por los demandados; que esa casa la construyó Alejandro Colón por orden suya; que él fué quien pagó a Alejandro Colón los servicios que prestó como carpintero; que allí fué a vivir su familia (su abuela, su tía y otras personas más) pero que él vivía aparte; que cuando murieron sus familiares, la casa fué alquilada a un tal José Ramos, a razón de cinco pesos mensuales; que cuando Ramos se mudó, la casa permaneció cerrada; que estando así cerrada los demandados se presentaron un día y le pidieron permiso y que él les dijo que sí; más tarde dice que los demandados se metieron en la casa y que después de estar allí fué que él se enteró y que los dejó por tratarse de familiares que estaban en mala situación; que luego les llamó la atención para que se mudaran y que los demandados de ninguna manera quisieron desocupar; que ellos no le pagan canon o merced alguna;

que la última vez que les requirió para que abandonaran la casa fué en 1939. Repreguntado por la defensa dice que el solar en que está la casa es de la sucesión de Eustaquio Colón; que la casa se construyó en 1929; que eso fué posterior al temporal de San Felipe.

Bernabé Fernández Segarra—Que conocía al demandante; que acostumbraba a comprarle tabaco; que en una ocasión el demandante le pidió que le guardara el dinero producto de las ventas, pues lo necesitaba para comprar alguna madera y que más tarde le pidió este dinero.

Alejandro Colón—Que es capintero; que hace doce o catorce años construyó una casa de madera, techada de zinc, para Ramón Colón; que esa casa medía 18 pies de frente por 21 de fondo; que lo ayudó un tal Lolo; que nadie más trabajó en la obra; que esa casa la viven actualmente los demandados.

Lorenzo Santiago—Que fué él quien hizo los hoyos para la casa; que el carpintero que trabajó allí fué Alejandro Colón; que esa casa es en la que viven los demandados actualmente; que Ramón Colón fué quien le pagó por su trabajo. Repreguntado dijo que la casa medía 18 pies de ancho por 21 de fondo; que recuerda exactamente las medidas porque el carpintero le informó de ellas; que además de Alejandro Colón también trabajó en la obra Joaquín Colón, pero que lo que hacía Joaquín Colón era aguantar las tablas, pues en realidad el carpintero era Alejandro Colón.

Rufino Rivera—Que fué él quien llevó las maderas para hacer la casa; que las recogía en "casa de Pacheco", que representaba Pepito Cintrón; que hacía esto por orden de Ramón Colón. Repreguntado declaró que no sabe si Ramón Colón tiene otras casas allí; que no sabe en qué casa se usó la madera que él llevó, pues al llegar al sitio entregaba la madera, cobraba y se regresaba.

Juan J. Cintrón—Que conoce bien a Ramón Colón, el demandante; que le ha vendido maderas en distintas oca-

siones; que hace alrededor de doce o catorce años le vendió una madera a Ramón Colón, la cual conducían hacia "Las Marías"; que no vió la casa en que se usó la madera; que no recuerda la fecha exacta de las ventas.

Juan de Dios Rodríguez—Que conoce a Ramón Colón, el demandante; que sabe que él fabricó una casa de madera en "Las Marías", después de San Felipe; que esa casa la hizo Alejandro Colón, carpintero; que vió al carpintero trabajando allí con Joaquín Colón; que Ramón Colón era quien pagaba al carpintero; que él vió cuando hacía ésto. Contestando a las repreguntas, este testigo incurrió en tantas contradicciones que su testimonio no es merecedor de crédito.

Los demandados presentaron la prueba siguiente: Escritura número 3 del 7 de enero de 1941 otorgada ante el notario Félix Luis Padilla, de Juana Díaz. En ella don Joaquín Colón y Colón le vende a Francisco Santiago (uno de los codemandados) el solar en que está ubicada la casa objeto de este pleito.

El testimonio de los testigos siguientes:

Francisco Santiago Colón (codemandado)—Declara que conoce al demandante Ramón Colón; que es hermano de su esposa (codemandada en este caso); que su esposa vive en esa casa desde San Felipe, fecha en que fué a cuidar a Leonarda; que ahí había una casa que fué destruída por el temporal de San Felipe y que pertenecía a Leonarda Colón (abuela de su esposa); que al destruirse la casa él se llevó a las señoras a Ponce a vivir con él; que estando viviendo todos en Ponce acordaron arrendar el terreno para, con el producto del arrendamiento, construir la casa en que actualmente viven; que el terreno fué arrendado a don Luis Guillermo Mercado por la suma de $100, por escritura hecha ante don Manolo Rivera, de Coamo; que doña Leonarda le dió el dinero a Joaquín Colón (hijo de esta última y tío de la esposa del testigo); que Joaquín Colón fué con Ramón Colón, para con un poquito de madera que había dado la

Cruz Roja hacer la casa objeto de este litigio; que él estaba presente cuando doña Leonarda le dió el dinero a Joaquín Colón; que él iba a menudo a ver cómo progresaban los trabajos de la casa; que Joaquín Colón y Alejandro Colón fueron los carpinteros que construyeron la casa; que él les daba dinero para seguir comprando los materiales que se necesitaban; que ese dinero era de su propio peculio; que la casa se terminó y vinieron a vivir a ella doña Leonarda, doña Eugenia y la esposa del testigo (las dos primeras abuela y madre, respectivamente, de la esposa del testigo declarante); que él se quedó en Ponce mientras tanto porque allí trabajaba con doña Ana González; que también vivía en la casa Joaquín Colón; que a la muerte de las dos señoras, su esposa se vino para Ponce; que hace cerca de siete u ocho años ellos decidieron ir a vivir a la casa y le enviaron a Joaquín Colón por la llave; que esa casa es de su esposa y que por ser de ella él la ha vivido como suya siempre; que Ramón Colón los quiere desahuciar porque él (el testigo declarante) le hizo sacar de su solar dos casas que dicho Ramón Colón había construído; que "es una venganza" de Ramón Colón contra él por haberle hecho sacar las casas antes mencionadas. Repreguntado no puede precisar si la suma de dinero que él alega aportó para la construcción de la casa fué utilizada para jornales, materiales o clavos, dice que como se trataba de familiares no había malicia y le bastaba con que dicho dinero fuera utilizado en la casa.

Carmen Colón de Santiago (codemandada)—Declara que la casa en que vive con su esposo es de ella; que la adquirió cuando San Felipe derrumbó la casa de la abuela, arrendando el terreno a Mercado, ayudada por la Cruz Roja y con dinero que aportó su marido; que alrededor de nueve años atrás Ramón Colón hizo unas casas; que Ramón Colón tiene como cuatro casas de su propiedad.

Víctor Santiago—Declara que vive en "Las Marías"; que tiene 52 años de edad; que conoce a los demandados y que éstos viven en una casa que era de la abuela de ellos, Leonarda Colón; que Ramón Colón construyó dos casas allí; que Joaquín Colón y Alejandro Colón fueron los que hicieron la casa objeto de este litigio; que vió hacer la casa. Repreguntado dice que Joaquín Colón y Alejandro Colón fueron los carpinteros que hicieron la casa; que no sabe quién les pagaba por su trabajo; que no sabe dónde se compró la madera. (Se hace constar por el juez que el testigo titubea.)

Carlos Giorgetti—Declara que conoce a los demandados; que los demandados vivían generalmente en Juana Díaz y algunas veces en Ponce, en el barrio Clausells; que conoció a doña Leonarda, la abuela, porque ésta crió a su esposa; que en una ocasión intervino como testigo para firmar un documento "para conseguir a doña Leonarda $100"; que vió a doña Leonarda recibir los $100; que vió la casa objeto de este litigio porque la ha visitado varias veces.

Juan Rivera Torres—Declara que conoce a los demandados y dice que hablaba con Francisco Santiago (codemandado) cuando éste pasaba y le decía "voy a ver cómo sigue la casa y voy a pagarle a los muchachos".

*Rebuttal* del demandante:

(1) Ramón Colón volvió a declarar para negar los hechos declarados por los demandados.

(2) Alejandro Colón volvió a declarar que Ramón Colón fué la única persona de quien él recibió dinero por su trabajo como carpintero.

De la prueba presentada por ambas partes, arriba sintetizada, se desprende claramente que el demandante, para acreditar su título de propiedad sobre la casa objeto de esta controversia, lo único que presenta es una escritura (acta de edificación) otorgada a su favor por Alejandro Colón, el carpintero que se alega construyó la casa. En ella el otor-

gante, al expresar que hizo dicha casa por orden del demandante, afirma que el solar en que se encuentra la misma pertenece a la sucesión Colón. Los demandados oponen a esta prueba documental una escritura de compraventa otorgada por Joaquín Colón a favor de Francisco Santiago (uno de los codemandados) traspasándole el dominio del solar. Este documento tiene fecha de 1941. Como puede apreciarse la escritura del demandante, hecha en 1943, expresa que dicho solar pertenece a la sucesión Colón, cuando desde 1941 era propiedad exclusiva de los demandados. Esa inexactitud es bastante para crear ciertas dudas respecto a la absoluta veracidad y exactitud del resto de lo expresado en esa escritura que nada demuestra haya sido inscrita en el registro de la propiedad y en la que aparece un carpintero expresando que construyó esa casa por orden del demandante. Esas dudas se reafirman cuando, tanto el carpintero como el demandante, insisten durante el juicio que el solar es de la Sucesión Colón. El mismo demandante en su declaración admite que no está seguro quiénes componen esa Sucesión.

La escritura de compraventa del solar presentada por los demandados nada prueba en cuanto al derecho de propiedad sobre la casa, no obstante, da apariencia de buena fe a su reclamación al demostrar inexactitud en la única prueba documental del demandante. Si a esa escritura del demandante no hubiera concurrido el carpintero, la misma no hubiera podido ser admitida en evidencia, al igual que la de los demandados, pues sería "self-serving evidence". Luego, si la fuerza probatoria de esa única prueba documental del demandante depende de la veracidad y exactitud del otorgante, al demostrarse la falta de exactitud en éste, surgen dudas en cuanto a la veracidad de lo expresado en la totalidad del documento. Y si a esa duda y a la aparente buena fe de los demandados, unimos el hecho de que éstos, al contestar la demanda, negaron el título del demandante y que como defensa especial reclamaron ser los únicos y verdade-

ros dueños de la casa, reclamación que fué sostenida por sus declaraciones, las que a su vez fueron corroboradas en parte por los testigos presentados, los que al corroborarlas establecieron además la aparente fuente del dinero que los demandados alegan se usó para construir la casa, llegamos a la conclusión de que se ha establecido un conflicto de título.

Sin que expresemos opinión alguna en cuanto a la suficiencia de la prueba para establecer un derecho de propiedad, creemos, sin embargo, que ella basta para demostrar la buena fe de la reclamación de los demandados y como hubo "algún indicio de prueba" en cuanto a la existencia de un derecho oponible al del demandante y tratándose, como se trata, de un pleito de naturaleza rápida y sumaria como es el de desahucio, creemos que debe desestimarse la acción interpuesta y en su consecuencia ordenarse que las reclamaciones controvertidas sean dirimidas mediante la interposición de la acción reivindicatoria pertinente. "Es cuestión bien establecida que reclamaciones opuestas de título, si son *bona fide,* no pueden ser juzgadas y resueltas en un procedimiento de desahucio." "Una cuestión aparentemente *bona fide,* sostenida por prueba que sea suficiente para demostrar algún color de la existencia de un derecho, es evidencia suficiente para presentar una cuestión genuina de título, justificará y requerirá la desestimación del procedimiento. Sabemos que no basta la mera alegación de título por parte del demandado, si que es necesario que presente por lo menos un principio de prueba y que es preciso que de las alegaciones y de la prueba de la parte demandada surjan hechos suficientes para demostrar que sus pretensiones de título no están desprovistas de fundamento." *Sucesión de Pedro Pedroza Trías* v. *Cándida Martínez,* ante, págs. 5, 10.

*La sentencia recurrida debe ser revocada y en su lugar dictarse otra desestimando la demanda.*