JULIA ENRIQUETA SCHRODER, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

*Número:* 1396    *Resuelto:* 4 de enero de 1962

*Carlos García Méndez,* abogado del recurrente; el Registrador recurrido compareció por escrito.

Sala integrada por el Juez Presidente señor Negrón Fernández como Presidente de Sala y los Jueces Asociados señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Mediante la escritura número 55 de 13 de mayo de 1952 ante el Notario don Carlos García Méndez, los esposos Juan Ignacio Ramírez y Julia Enriqueta Schroder constituyeron hipoteca voluntaria sobre dos fincas rústicas sitas en el municipio de Lajas a favor de los esposos Orlando Irizarry Morales y Carmen Emilia Irizarry para garantizar la devolución de la suma de seis mil dólares dentro del término de tres años —tres plazos anuales de dos mil dólares. Entre los términos de la hipoteca se incluyó una cláusula mediante la cual los deudores hipotecantes renunciaron a ser notificados en caso de cesión total o parcial del crédito (Artículo 152 de la Ley Hipotecaria, 30 L.P.R.A. sec. 265.) Este crédito hipotecario fue debidamente inscrito en el Registro de la Propiedad.

Por escritura número 18 de 8 de abril de 1953 ante el Notario don Leo Irizarry, los acreedores hipotecarios constituyeron hipoteca sobre el referido crédito para garantizar un pagaré a la orden del tenedor por la suma de seis mil dólares de principal. Fue condición que la subhipoteca constituida "queda pendiente de la resolución de los hipotecantes, quienes consienten en que se notifique el contrato a su deudor Juan Ignacio Ramírez, a fin de que no satisfaga la deuda sin la concurrencia o consentimiento de quien resultare ser acreedor subhipotecario como portador de la obligación que se garantiza". Se inscribió la subhipoteca.

Finalmente, en 29 de marzo de 1961 los acreedores hipotecarios otorgaron la escritura número 119 ante el Notario

Carlos García Méndez mediante la cual confesaron haber recibido el importe adeudado y consintieron a que se cancelara la hipoteca constituida a su favor. En el mismo documento compareció la recurrente doña Julia Enriqueta Schroder y solicitó que se cancelara la inscripción de la subhipoteca por haberse cancelado a su vez el crédito sobre el cual ésta recaía. El Registrador negó la inscripción de la cancelación tanto de la hipoteca como de la subhipoteca por no haberse acreditado que el acreedor subhipotecario hubiese consentido en la cancelación de la hipoteca o de la subhipoteca. Se impugna esta calificación registral. ■

El número 8 del artículo 107 de la Ley Hipotecaria, 30 L.P.R.A. sec. 203,(¹) permite la constitución de una hipoteca sobre otra hipoteca cuando expresa que "Podrán hipotecarse, pero con las restricciones que a continuación se expresan: ... 8. El derecho de hipoteca voluntaria, pero quedando pendiente la que se constituya sobre él de la resolución del mismo derecho." Se permite pues una enajenación *limitada* de un crédito hipotecario.(²) Es la regla cuarta del artículo 137 del Reglamento Hipotecario, 30 L.P.R.A. sec. 1037, referente a las cancelaciones de las inscripciones cuya existencia no dependa de la voluntad de los interesados en las mismas, la que bautiza esta figura jurídica con el nombre de subhipoteca. Es curiosa esta figura a la cual con laconismo extremo la ley se refiere específicamente tan solo a los momentos de su vida y su muerte. ■

---

(¹) Este artículo es de idéntica redacción a su concordante en la **Ley** Hipotecaria de España, en donde figura con el número 4 del artículo 107.

(²) Para una interesante discusión sobre la determinación de la posibilidad de la existencia de la subhipoteca según el sistema del Derecho moderno—que la niega, y admite únicamente la prenda sobre créditos hipotecarios, o sea, la pignoración de un crédito que arrastra como accesorio la hipoteca que garantiza su pago—, o el sistema del Derecho romano—que lo admite y denomina *pignur pignoris*—, véase, Roca Sastre, *Derecho Hipotecario*, ed. 1954, vol. IV, págs. 277–282; véase, Diez Pastor, *Notas Acerca de la Naturaleza y Contenido de la Subhipoteca*, Revista Crítica de Derecho Inmobiliario, Tomo 6, págs. 440–457 (1930).

Para el problema que ahora nos interesa, la mencionada regla dispone que:

"La inscripción de subhipotecas a que se refiere el número 8 del artículo 107 de la ley, constituida sin las formalidades que para las cesiones de créditos hipotecarios establece el artículo 152 de la misma, y las de esta clase comprendidas en el artículo 154, podrán cancelarse en virtud de la escritura en que conste la resolución del derecho del subhipotecante o cedente."

Podrá observarse que en forma indirecta, y a los fines de fijar determinadas consecuencias para la cancelación, se alude como requisitos para la constitución de la subhipoteca los relativos a la cesión de créditos hipotecarios, que de acuerdo con el artículo 152 de la ley, 30 L.P.R.A. sec. 265, son tres: 1) que conste en escritura pública; 2) *que se dé conocimiento al deudor*; y 3) que se inscriba en el Registro de la Propiedad. Véanse, *Colón* v. *Santiago*, 64 D.P.R. 312 (1944); *Montilla* v. *Van Syckel*, 8 D.P.R. 160 (1905); *Valls* v. *Blanes*, 7 D.P.R. 394 (1904).

De todo lo expuesto se deduce que si la constitución de la subhipoteca no se ha notificado al deudor hipotecante, bastará para su cancelación la presentación de la escritura de cancelación de hipoteca; pero si ha mediado notificación, será necesaria la concurrencia del acreedor subhipotecario para prestar su consentimiento.[3]

Roca Sastre, op. cit., vol. IV, págs. 282–283, discute la cuestión así:

"Admitida en nuestro Derecho positivo la hipoteca sobre otra hipoteca, aquélla queda sometida a la restricción derivada de la

---

[3] El número 4 del artículo 175 del Reglamento de la Ley Hipotecaria de España—correspondiente al 137 de nuestro Reglamento—es aun más preciso ya que expresamente dispone que "En el caso de que se hubieren cumplido dichos requisitos (entre ellos, el de notificación) será necesario, además, el consentimiento del subhipotecario o la consignación de la cantidad asegurada por la subhipoteca, si fuere igual o inferior a la garantizada por la hipoteca." Dada la redacción del artículo 137 del Reglamento y su referencia expresa a las subhipotecas constituidas sin las formalidades del artículo 152 de la Ley, la ausencia de una disposición similar en Puerto Rico no altera la conclusión que hemos expuesto.

subsistencia de ésta, ya que, como establece el número cuarto del artículo 107 de la ley, la subhipoteca *queda pendiente de la resolución* (mejor sería decir de la extinción) del derecho de hipoteca sobre la cual recae.

"El modo más natural y frecuente de extinguirse esta hipoteca es el pago efectuado por el propietario de la finca gravada al primer acreedor.

"Pero la ley no deja desamparados los intereses del acreedor subhipotecario, si bien para su defensa exige que se haya cumplido el requisito de la *notificación* de la subhipoteca al deudor. Es el mismo requisito de la *denunciatio* de la cesión de créditos hipotecarios mediante la cual se pone formalmente *en conocimiento* del deudor la existencia de la subhipoteca a los efectos de no reputarse en lo sucesivo como pago bien hecho el que se efectúe al acreedor subhipotecante, pues una vez el deudor esté enterado de la existencia de la subhipoteca no puede satisfacer su débito sin *consentimiento* del acreedor subhipotecario o efectuar su *consignación* en forma. En cambio, no habiéndose procedido a dicha notificación, si el deudor paga al acreedor subhipotecante el pago se reputa bien hecho y la hipoteca se *extingue,* pudiéndose quedar el acreedor subhipotecario sin cobrar su crédito; esto constituye otra restricción a la subhipoteca, si bien en este caso tiene la misma su origen en la negligencia del acreedor subhipotecario, en relación posible con la mala fe del deudor subhipotecante.

"La regla 4a. del art. 175 del Reglamento establece estos efectos con vistas a la *cancelación* de la subhipoteca. Dispone aquélla que la inscripción de subhipoteca, constituida sin los requisitos del art. 149 de la ley, podrá cancelarse en virtud de la escritura en que conste la resolución del derecho del subhipotecante. En el caso en que se hubieren cumplido dichos requisitos, será necesario, además, el consentimiento del subhipotecario o la consignación de la cantidad asegurada por la subhipoteca, si fuere igual o inferior a la garantizada por la hipoteca." [5]

El profesor adjunto de Derecho Civil de la Universidad de Sevilla don Antonio Gullón Ballesteros en su obra *El Derecho Real de Subhipoteca,* Ed. Bosch, Barcelona (1957), indica que la notificación tiene un doble efecto: formal, en cuanto a la cancelación de la subhipoteca, y material, por la intervención del acreedor subhipotecario en el pago del crédito. Y añade, a las págs. 119 y 120:

"Si la subhipoteca se ha notificado, es necesario, junto con la anterior escritura, el consentimiento del titular de la inscripción de subhipoteca. Nos encontramos con otro requisito más, añadido a los anteriores que la ley concreta, de una manera vaga e imprecisa, en el consentimiento del subhipotecario, pero sin especificar el modo de prestarlo y dónde ha de constar. ¿Cuál es la finalidad de este nuevo requisito? ¿Hará falta para la cancelación de la hipoteca e indirectamente de la subhipoteca, o sólo para la cancelación, según el artículo 175, de la inscripción de subhipoteca? Ya hemos indicado la falta de precisión en la ley al no subordinar los actos de cancelación de subhipoteca a los de hipoteca de una manera expresa. Basándonos en ello y en el artículo 107 de la ley, concluimos afirmando que la intervención del subhipotecario no tiene por finalidad inmediata y directa la cancelación de la subhipoteca, sino de la hipoteca. En efecto, siendo la subhipoteca una figura que tiene su soporte material y jurídico en la hipoteca, es indudable que cualquier acto que afecta a ésta, más si es un acto extintivo de la misma, ha de afectar el derecho del titular de aquélla, otorgándole, por lo tanto, una intervención en el acto de cancelación. El artículo citado nos lo demuestra a *sensu contrario*. Si este requisito se impusiera sólo y exclusivamente para la cancelación de la subhipoteca, ¿qué utilidad tendría? Ninguna, porque de poco valdría que el acreedor subhipotecario no diera su consentimiento a la cancelación de su derecho real si la hipoteca se ha extinguido ya, sin que él haya intervenido en el acto de su cancelación. Como esto es un absurdo que choca con el artículo 107, número 4, de la ley, el mismo legislador se ha cuidado de obligar al subhipotecario a que coopere en el acto de cancelación del objeto de su gravamen, para que desaparezcan del Registro a un mismo tiempo las dos garantías."

En el mismo sentido se pronuncia Morell y Terry en sus *Comentarios a la Ley Hipotecaria*, 2a. ed. (1928), tomo 3 pág. 420.

Requiérese que hagamos una incursión en nuestras opiniones anteriores para aclarar conceptos y limitar doctrinas. *Mató* v. *Banco Territorial y Agrícola de P. R.*, 30 D.P.R. 17 (1921), en el cual descansa la parte recurrente, discutió la cuestión *in passim*, y al efecto se dijo a la página 18 que:

"Es un hecho admitido que el banco subhipotecó el crédito garantizado con la hipoteca de que se trata, sin pedir el consen-

timiento del deudor, y la primera cuestión que surge es ¿pudo el banco actuar de tal modo? A nuestro juicio la cuestión debe resolverse en la afirmativa de acuerdo con lo dispuesto en el artículo 107, núm. 8, de la Ley Hipotecaria, o sea que "Podrán hipotecarse, con las restricciones que a continuación se expresan: . . . 8. El derecho de hipoteca voluntaria, pero quedando pendiente la que se constituya sobre él de la resolución del mismo derecho."

Parece claro que para hacer tal afirmación solamente se consideró el precepto general contenido en el número 8 del artículo 107 de la Ley Hipotecaria, pero que en forma alguna se tuvo presente la regla cuarta del artículo 137 del Reglamento. El aserto transcrito debe, por tanto, considerarse válido en tanto se refiere a cancelaciones de subhipotecas en las cuales no medió notificación al deudor hipotecante. (⁴) El Registrador fundamenta su nota en *León* v. *Registrador*, 46 D.P.R. 55 (1934) en donde se expresó que un crédito hipotecario embargado no puede ser pagado y cancelado en el registro sin la intervención de las partes favorecidas por el embargo anotado. Cf. *González* v. *Registrador*, 54 D.P.R. 336. No estuvo desacertado el Registrador al pensar que si tal consideración merecía un derecho personal como el embargo, cuando menos iguales consecuencias deben resultar cuando se trata de un derecho real como el de la subhipoteca inscrita. Sin embargo, no era necesario acudir a esta resolución cuando la cuestión planteada está expresamente regulada por la Ley Hipotecaria, cuyos preceptos son los únicos aplicables. ■■■

Réstanos considerar si en alguna forma surge que se notificó al deudor hipotecante sobre la constitución de la subhipoteca. De lo que hemos podido examinar del expediente ante nos simplemente surge que al otorgarse la escritura de sub-

---

(⁴) Hemos examinado el expediente de la apelación en el caso de *Mató* v. *Banco Territorial, etc.,* supra, y en la demanda presentada aparece alegado afirmativamente que el Banco subhipotecó el crédito hipotecario constituido por la demandante "*sin haberlo notificado a la demandante,* y sin el consentimiento de ésta". Siendo ello así el resultado a que se llegó en la opinión es correcto conforme a la norma que hemos enunciado en la presente opinión.

hipoteca se contrajo la obligación por parte del acreedor hipotecario, quien era a la vez el deudor subhipotecante, de notificar al deudor principal. No existe constancia alguna de que ello se hiciera. Sin embargo, al comparecer al otorgamiento de la escritura de cancelación del crédito, la recurrente demuestra que tenía conocimiento pleno de la existencia de la subhipoteca, pues solicita su cancelación. Siendo ello así, era necesaria la concurrencia del tenedor del pagaré garantizado con subhipoteca para que prestara su consentimiento a la cancelación que se efectuaba. La notificación al deudor tiene por propósito exclusivo evitar que, alegando ignorancia, éste haga el pago al primitivo acreedor, haciendo ilusorio el derecho del acreedor subhipotecario. De ahí que si se comprueba que en alguna forma el deudor tiene conocimiento de la existencia de la subhipoteca es como si se le hubiera notificado. Así se sostuvo precisamente por la Dirección General de los Registros en su resolución de 16 de diciembre de 1902 (Roca Sastre y Molina Juyol. *Jurisprudencia Registral*, Ed. Bosch: Barcelona (1953), tomo III, pág. 998, 1000), en donde en circunstancias parecidas se confirmó la calificación registral "[c]onsiderando que en la misma escritura de cancelación que ha motivado el recurso aparece que en el acto del otorgamiento tenía ya el deudor conocimiento de tales inscripciones [de las subhipotecas], y por tanto, no cabe dudar de que estaba cumplido el requisito que exige el art. 153 [art. 152 de Puerto Rico, relativo a la notificación de la cesión], cuyo objeto no puede ser otro que el de que enterado el deudor de la cesión o enajenación del crédito no lo satisfaga al acreedor sin el concurso de la persona subrogada en sus derechos."

*Se confirmará la nota recurrida.*